## MORROW VS. REED and others.

*Chattel Mortgages — Delivery, what necessary to pass title.*

1. A chattel mortgage is required to be filed or recorded only when the mortgagor retains possession of the property.
2. Where there is some irregularity in the filing or recording of a mortgage, or it fails to duly describe the property, or covers property to be subsequently acquired, such defects are all cured by a subsequent delivery of the property to the mortgagees, as against parties who have not acquired paramount rights *before* such delivery.
3. The delivery in such a case must be such an actual transfer of the possession and control of the property that if it were destroyed the loss would be that of the mortgagee.
4. Where the property is bulky and incapable of manual delivery, as ·in the case of logs, it is sufficient that the mortgagor goes with the mortgagee to the place where it lies, and points it out to the latter as the property included in the mortgage, and which he thereby transfers to the mortgagee's possession.
5. Where the agreement for the *sale* of logs is, that the vendee shall take title to them as soon as they are gotten out and deposited in a certain place, the title will pass when the logs are deposited at the place designated (if that was the intention of the parties in making the contract), even though the vendor is still required to *scale* them.

APPEAL from the Circuit Court for *Brown* County.

*Morrow* brought his action to recover of the defendants the value of certain logs alleged to have been unlawfully taken from his possession by defendants and converted to their use. The answer alleged that the defendants, under the firm name of " The Howard Mill Company," were the owners of the logs in question, and were entitled to and had actual possession of the same at the time of the alleged conversion, by virtue of purchase thereof from the former owners, Daniel and Finley McDonald, as well as by virtue of the payment of certain liens on the logs for rafting and towage.

Plaintiff, to establish his title, offered in evidence upon the· trial two mortgages from Daniel and Finley McDonald to *Elisha Morrow* of certain logs described in the first mortgage as " eight

hundred thousand feet of good pine saw logs lying and being on the east side of Green Bay, on the bank of said east shore of Green Bay, from about one to two miles from Dykesville, south on the said shore, in the town of Scott, and in the county of Brown." The description in the second mortgage was as fol. lows: "Four hundred thousand feet of good pine saw logs, now lying on the Green Bay shore in the town of Scott, and lying about one and one half miles this side of Dykesville." The first mortgage was dated February 1, 1869, and was endorsed on the back; "Filed May 5th, 1869, at 3 o'clock P. M. W. C. E. Thomas, city clerk." The second mortgage bore date March 3, 1869, but was never filed, and bore no indorsement. Defendants objected to the introduction of the mortgages, on the ground, among other things, that they did not describe any particular logs, which objection was overruled and the mortgages were admitted in evidence. Daniel McDonald, for plaintiff, testified as follows:

" I went down to the bay shore, where these logs were, with Mr. Morrow. The purpose for which I went down with him was to get money to pay off the hands in the spring. I couldn't raise it. I wanted to save an attachment being put on my logs. I went to Campbell first. I went to Morrow. I went down to deliver the logs up to Morrow. I went down there after I drew this chattel mortgage to Morrow, and delivered to him actual possession of these logs so far as I could. Delivered him possession of these logs. * * We went down and looked at the logs. Morrow asked me if those were the logs I was to deliver to him. I told him yes, they were the logs I believed. Those were the words that I used. We went over the logs, saw what we could of them. Did not see them all. Some were piled on others. They were in different piles on the shore, and I went along and pointed them out to Morrow. The logs that were in the last mortgage were also there at that time."

Defendants, to establish their prior title to the logs, offered in evidence a written contract entered into between defendants'

company and the McDonalds, bearing date December 26, 1868, whereby the latter agreed to deliver to the company at its boom at Fort Howard, by the 15th day of June, 1869, pine logs sufficient to make five hundred thousand feet of lumber, the logs to be scaled in the water when delivered; also a written agreement conveying to the Howard Mill Company, to secure the enforcement of the foregoing contract, certain logs described as "five hundred thousand feet (500,000) of saw logs now lying on the east shore of Green Bay, near Red river." There was some evidence tending to show that subsequent to the execution of the written contract between the McDonalds and defendants, this contract was modified by a parol agreement that the logs should become the property of the company when placed or delivered on the shore of Green Bay, but the evidence on this point was conflicting. There was evidence of a delivery of the logs to defendants by being rafted to the bay shore at a point called Whitney's Bluff. Defendants also produced in evidence the record of a judgment in the circuit court for Brown county, on the 25th of May, 1869, in favor of Andrew Reid and against the McDonalds, with an execution on said judgment, dated May 25, 1869, and the sheriff's return, showing a sale to defendants on the 6th day of July, 1869, of all the right, title and interest of the McDonalds in the logs in question.

The instructions, which were very voluminous, sufficiently appear in the opinion. Verdict and judgment for plaintiff, from which defendants appealed.

*Hastings & Greene*, for appellants.

*Neville & Tracy*, for respondent.

COLE, J. A number of objections have been taken to the validity of the chattel mortgages upon which the plaintiff claimed to hold the logs in controversy. It is said that they do not contain a sufficient description of the mortgaged property to enable a third person to identify it; that they refer in part to after acquired property; that a portion of the logs embraced

in the mortgages were marked logs, and therefore the law required the mortgages to be recorded in the office of the inspector of lumber for the district; and that the mortgages were never properly filed in the office of the town clerk, consequently that the instruments were void.  It may be conceded, for the purposes of this case, that these various objections to the validity of the chattel mortgages would be well taken had there not been a delivery of the logs upon the mortgages.  The plaintiff's claim is, that on or about the 27th of March, 1869, he and Daniel McDonald, one of the mortgagors, went along down the east shore of Green Bay, where the logs were then lying, and that McDonald then pointed out and delivered the logs upon the mortgages.  If this was done as claimed, it would cure any defect in the mortgages on account of any imperfect description of the logs, or in respect to after acquired property; and would obviate the objection that the mortgages were not properly recorded and filed.  For it would be an appropriation of the specific logs to the mortgages and a designation of the property to which they were to attach.  The object of requiring a mortgage of personal property to be filed or recorded is to give creditors and subsequent purchasers notice of its existence when the mortgagor retains possession of the property.  If the actual possession of the property is changed, then the necessity for recording or filing the chattel mortgage fails.  And the same may be said in respect to an imperfect or insufficient description of the mortgaged property.  If the mortgagee takes possession of the mortgaged property, that is sufficient.  That is an identification and appropriation of the specific property to the mortgagees.  And, therefore, it seems plain to us that all these objections taken to the validity of the chattel mortgages become entirely immaterial if, in fact, there was a delivery of the logs to the plaintiff under the mortgages, on the 27th of March, as claimed by him.

It is very clear that the jury must have found under the instructions of the court that the logs were actually turned out

and delivered to the plaintiff upon the chattel mortgages. For the court charged that to render a chattel mortgage valid as to third parties, it must either be filed as the law requires, or the mortgaged property must be delivered to the mortgagee. And further, that if they were satisfied from the evidence that about the 27th of March the plaintiff and McDonald went down to Whitney's Bluff and along the east shore of the bay where the logs then were, and that McDonald delivered the logs on the mortgages as testified to by the witnesses, that then the plaintiff's title to the property would be complete as against the defendants, and that he would be entitled to recover its value if the defendants had converted them as alleged, unless there had been a previous sale and delivery to the Howard Mill Company. Also, that if the logs did not become the property of the Mill Company prior to the alleged delivery to Morrow, or the filing of the chattel mortgages, that then the plaintiff was entitled to the possession of such of the logs as were mortgaged and delivered to him, so long as anything remained due and unpaid on them. And the court was still more specific as to what would amount to a good delivery by telling the jury in effect that it must be such as to vest the property in the plaintiff, so that he had the right to control it from that time, and if the logs were lost or destroyed the loss would fall upon the plaintiff; and that if there were a greater number of logs on the bank than called for by the mortgages, that the mortgages would not attach to any particular portion unless such portion was set apart and designated from the remainder, or unless there was an actual delivery of the whole quantity, with the right on the part of the plaintiff to select from the larger quantity such portion as he might be entitled to under the mortgages. We have not given the precise language of the charge, but this is its scope and effect upon the question of delivery to the plaintiff. And we can see no error in these instructions, and we think they correctly state the law applicable to the facts which the evidence tended to establish. And it is manifest we

think that upon the whole charge and instructions as given, the jury must have found that the property in controversy in this suit was actually delivered to the plaintiff upon his mortgages about the 27th day of March as claimed by him. This being the case, as already observed, all questions as to the validity of those instruments are necessarily out of the discussion. And this brings us to the inquiry next to be considered, namely, whether the jury were properly instructed upon the question whether the logs had been previously sold and delivered to the Howard Mill Company prior to their being delivered to the plaintiff. It appeared by the evidence that a written contract was entered into between the company and the McDonalds on the 26th of December, 1868, by which the latter agreed to furnish and deliver to the company at its boom at Fort Howard, pine logs of a designated kind and amount by the 15th of June next following, the logs to be scaled in the water when delivered. It was claimed that there had been a parol modification of this written contract, by which it was agreed that the logs should become the property of the Mill Company when placed or delivered by the McDonalds on the shore of Green Bay. It was by no means a conceded fact that such a parol agreement had been made, in and by which the logs were to become the property of the Howard Mill Company as fast as they were cut and placed upon the shore, without anything further being done to pass the title. There was a conflict in the evidence upon that point. But the court charged the jury in an instruction asked on the part of the defendants, that if the agreements between the McDonalds and the Howard Mill Company were such as to satisfy them, that the McDonalds intended that the logs in question should become the logs of that company when they were put on the bank or shore of Green Bay at Whitney's Bluff; the property in the logs would pass to and become vested in the company, which would have the right to take them away whenever it chose to do so. And the same proposition substantially was given in another place in the general charge, where

the jury were told that if there was no greater quantity of logs put on the shore by the McDonalds than the Howard Mill Company were to have under their contract, then they were to inquire whether the delivery of the logs on the bank was intended by the parties to be a delivery to the company; whether the right of the McDonalds to the logs was to cease from that moment, and the right of the company attach; and which party had the right to control the logs from that time, or would sustain the loss if they were destroyed or lost.

We see no objection to this charge. Whether or not the sale was complete and the title passed from the McDonalds to the Mill Company, was made to turn upon the intention of the parties and the real conditions of the contract. If the contract was that by placing the logs on the shore, this was to be a delivery to the company, so as to pass the title and vest the property in the company, so that if the logs were destroyed after that time it would bear the loss, then, manifestly, the sale was complete and perfect. The subject of the sale was bulky, ponderous things, incapable of manual delivery. "When goods are ponderous or bulky, or cannot conveniently be delivered manually, or when they are not in the personal custody of the vendor, the law does not require an actual delivery thereof, but only that they should be put under the absolute power of the vendee; or that his authority as owner should be formally acknowledged; or that some act should be done typical of a surrender of them on the one side, and of the acceptance of them on the other. The transferance of any article which is a symbol or evidence of ownership, or the assertion of complete authority on the part of the vendee by acts consistent only with ownership, and assented to by the vendor, constitutes a sufficient construction of delivery." Story on Sales, sec. 311. In this case, plainly, there could only be a constructive delivery of the logs. The parties might provide in their contract that the title should pass as soon as they were delivered or placed on the bank. The court said it

depended upon the intention of the parties whether that was to be a delivery of the logs so as to pass the title. And it seems to us, under the circumstances, that this was a correct view. It may be said that something would still remain to be done; that the logs would have to be scaled or measured in order to ascertain the quantity, and, therefore, the sale was not complete. It is true that, ordinarly, so long as anything remains to be done by the seller, the goods are at his risk; yet, this general rule may be overcome by the special facts of the case; and if it clearly appear to have been the intention of the parties that the property should be deemed to be delivered, and the title to have passed, and especially if their acts be inconsistent with any other view, the mere fact that something remains to be done, will not govern such intention." Story on Sales, section 298 a, *Turley v. Bates*, 2 Hurl. & Colt, 200; *Bradley v. Wheeler*, 44 N. Y., 496; *Sewell v. Eaton*, 6 Wis., 490; *Godfrey v. Germain*, 24 do. 410; Benjamin on Sales, p. 238, et seq. Blackburn on Cont. of Sales, 15, et seq., (55 Law Lib., 80); *Kimbly v. Patchin*, 19 N. Y., 330; *Riddel v. Varnum*, 20 Pick., 280. And if it was clear that the parties intended that the title should pass when the logs were placed upon the shore, and if from that moment the right of the McDonalds in the logs should cease, and that of the Mill Company attach, so that the company would sustain the loss if they were destroyed, then the logs were the property of the company at this time, and there could be no subsequent delivery of them to the plaintiff on his mortgages. Evidently the jury were not satisfied that this was the intention of the parties or the terms of the contract in respect to the delivery of the logs to the Howard Mill Company. And this disposes of that issue.

Of course all that has been said as to what would be a good delivery of the logs to the Howard Mill Company is equally applicable to a delivery on the mortgages. Any formal act intended as a delivery would be sufficient. If the plaintiff and Daniel McDonald went along the shore where the logs were

lying, and McDonald said " that he delivered these logs under these mortgages," as both the plaintiff and McDonald testify, that was all the delivery that possibly could be made under the circumstances.   McDonald pointed the logs out to the plaintiff as they went along by the different piles and thus appropriated them to the mortgages.

On the trial the defendants asked the court to give a great number of instructions as applicable to the evidence. The court refused to give these instructions except the one already alluded to.   The instructions are not numbered and fill eight pages of solid printed matter.   We shall only make a remark upon them. They seem to us to be unnecessarily prolix — sometimes stating essentially the same proposition in different ways — and they would have served to confuse the minds of the jury rather than to aid them in arriving at a correct verdict.   For this reason we think the court properly declined to give them.   We cannot be more specific in our remarks upon them on account of the manner they are presented in the record.   We think all the law necessary to aid the jury in their deliberations was given by the court in its general charge.   Nor do we see any objections to the instructions which were given at the request of the plaintiff.   The two questions in the case, whether there was a delivery of the logs to the Howard Mill Company according to the contract made by the company with the McDonalds so as to pass the title; and if not, whether there was such a delivery to the plaintiff, were fairly submitted to the jury upon the evidence.   The jury have found for the plaintiff upon both these questions.

*By the Court.*— The judgment of the circuit court must be affirmed.