MORROW VS. CAMPBELL and others.

*Delivery — Requisites of to pass title.*

Under a contract that A. shall get out logs and deposit them at a certain spot, and that as fast as they are so deposited the title shall vest in B., the actual deposit of the logs by A. at the place named passes the title to B.; and it makes no difference whether or not, *at the time of so depositing the logs*, A. "intended then and there to deliver them to B., and to part with his property in them."

APPEAL from the Circuit Court for *Brown* County.

The facts of this case, in all essential particulars, with a single exception, are substantially the same as in another case between the same parties, argued and decided at the present term. They will be found fully stated in the report of that case, page 81, *ante*, and it is unnecessary to repeat them here.

The exception above referred to is, that the following instructions were given by the court to the jury, which were not given in the other action, to wit:

6. "In order to constitute a valid delivery it must have been the intention of the one party to deliver and the other to receive at the time of such delivery. The jury cannot therefore find a valid delivery of the logs to the Howard Mill Co. at Whitney's Bluff, unless they believe that at the time the logs were hauled there and left by the McDonalds, the latter intended then and there to deliver the same to the Howard Mill Co., and to part with the property in the logs themselves."

7. "Even if the jury believe that the contract between the McDonalds and the Howard Mill Co. was, that the logs should become the property of the latter as fast as delivered at Whitney's Bluff, that would not convey the property in the logs to the company, unless, at the time the logs were actually delivered upon the shore, it was by the parties intended as an actual delivery to the Howard Mill Co., and as vesting the property in the logs in them absolutely."

The foregoing instructions were given at the request of the plaintiff, and duly excepted to by the defendants.

It is believed that all the questions presented by this appeal, except that of the correctness of such instructions, are determined in the other action.

The plaintiff recovered in the court below, and from the judgment against them the defendants appeal.

It should be stated that a part of the defendants constitute members of the Howard Mill Company named in the instructions.

*Hastings & Greene*, for appellants.

*Neville & Tracy*, for respondent.

LYON, J. The original contract between the Howard Mill Co. and the McDonalds, was that the latter should furnish and deliver to the company in its boom at Fort Howard, a specified quantity of pine saw logs. The evidence tends to show that there was a valid modification of the contract made by the parties after it was executed, to the effect that the McDonalds should put the logs on the bay shore for the mill company, and that as the logs were placed there they should become the property of the company. If the contract was thus modified, the title of the McDonalds to the logs, as fast as they were put on the bay shore, vested in the company, until the quantity equalled that which the contract called for. The proposition that it was competent for the parties to so contract that the McDonalds' title to the logs would pass to the mill company by the mere act of placing them upon the bay shore, and without any other act or ceremony whatever, is too well settled to require argument or citation of authorities to sustain it.

But the court instructed the jury substantially that although such contract had been made between the McDonalds and the mill company, and although the McDonalds got out the logs and delivered them at the designated place in apparent performance of their agreement, still no title thereto passed to

the company unless the McDonalds at the time *intended* to deliver them to the mill company. Very clearly this is error. If the McDonalds and the Howard Mill Co. agreed that the former should get out a specified quantity of logs for the latter and put them upon the bay shore, and that as fast as they were so delivered upon the bay shore the title to the logs should be in the company, and if afterwards the McDonalds got out the logs, and, while the owners thereof, put them at the designated place, the same thereupon became the property of the company. It is entirely immaterial what the *intentions* of the McDonalds were in relation to the delivery. The question is not, in this case, what did they *intend* to do? but what *did* they do? The court will look only to their acts, and not to their mental processes. If while the contract for the sale of the logs remained executory, they desired to prevent the title thereto from passing to the company, they could only do so by abstaining from executing the contract : that is by abstaining from placing the logs at the designated place, while they were the owners thereof. Having placed them there, if the agreement was as is claimed by the mill company, and as the testimony tends to show that it was, neither the McDonalds or any other person claiming under them can be heard to aver that they placed the logs there with the mental reservation that they did not intend by the act to fulfill such contract, but to violate it.

Were the law otherwise, then any person might sell property, receive payment therefor, and actually deliver it to the vendee, who purchases in the utmost good faith; and yet, afterwards, when the property is seized by a creditor of the vendor on attachment or execution, the title of the purchaser would be liable to be defeated, if the vendor should testify that when he delivered the property to the vendee he did not intend to deliver it to him at all, but cherished the secret purpose of asserting his own title thereto at some future time. Take another illustration. A. sells a horse to B. and agrees to place him in the stable of C., and the contract is, that when he does so, the title thereto

shall become absolutely vested in B., who has fully paid the contract price.   A. places the horse in the stable of C. where he remains for a week.   During that time A. sells the horse again to D. and B., the first purchaser, brings his action to recover the horse or the value thereof of D., the last purchaser, who has possession of the property.   Can the right of B. to the horse be defeated by proving that when A. placed him in the stable of C. his secret intentions were to swindle B. out of his payment by selling the animal to some other person?   Of course not.   The law of the case last supposed, is that when A. performed the act, which he agreed should transfer the title of the property to B., the title was thereby transferred to B., and the intentions or mental reservations of A., to the contrary, are of no consequence whatever.   The principle involved in this case is precisely the same.

We hold, therefore, that if the contract was modified as claimed, a delivery of the logs at the designated place by the McDonalds vested their title thereto in the defendants, the Howard Mill Co., although the McDonalds at the time of such delivery might have secretly determined not to let the company have the logs but to dispose of them to other parties.

We are not here passing upon any questions which may be raised under the statute of frauds, in respect to the actual possession of the property in controversy.

It necessarily follows, from the foregoing views, that the circuit judge erred in his charge to the jury, in the particular hereinbefore specified, and for that reason there must be a new trial.

*By the Court.*— Judgment reversed and a *venire de novo* awarded.