Pike vs. Vaughn and others.

Pike vs. Vaughn and others.

SALE: DELIVERY: STATUTE OF FRAUDS. *(1) Title to logs does not pass until measured, unless so agreed. (2) Question of delivery. Case stated. (3) Parol contract, not executed by delivery, void under statute of frauds, notwithstanding subsequent payments.*

PRACTICE. *(4) Practice on remanding judgment when evidence not before this court.*

1. In general, where the vendor in a contract for the sale and delivery of logs is bound to ascertain the quantity by having the logs scaled, title

Pike vs. Vaughn and others.

does not pass to the vendee until all the logs are delivered and duly measured; but the parties may enter into a valid agreement that the title shall pass as fast as the logs are deposited in the place agreed upon for delivery; and in that case they will be at the vendee's risk from the time of such deposit, even though the vendor may still be bound to have them scaled.

2. Plaintiff agreed to purchase all the logs which one M. could deliver in a certain logging season, and M. got out logs and placed them at or near the point of delivery, which was upon his own land. The contract was silent as to where, when and by whom the logs should be scaled, and it does not appear that they were ever measured in fact. Plaintiff advanced to M., under the contract, goods and supplies to a considerable amount, prior to March 12th, which was the end of the logging season; and afterwards paid him considerable sums on account of the logs prior to the 8th of August. Before that day, the logs still being at the same place, M. sold and delivered a portion of them to V., who on that day took a part of them into his possession, and carried them away as his own. In an action against M. and V. for a conversion of the logs so carried away: *Held*, that the parties to the contract must be presumed to have intended that the logs should be examined by the purchaser, or at least that the quantity should be ascertained, before delivery to plaintiff and acceptance by him; and that there was no complete sale to the plaintiff.

3. The contract, which was by parol, not having been executed by a delivery and acceptance of the logs, was void by the statute of frauds, and subsequent payments did not take it out of the operation of the statute.

4. The question in this case having arisen entirely on the findings of the trial court, and the evidence not being before this court, the judgment for the plaintiff is reversed, and the cause remanded with a suggestion that the circuit court grant a new trial, if satisfied that justice would thereby be promoted, but that otherwise it dismiss the complaint.

APPEAL from the Circuit Court for *Bayfield* County.

The complaint alleged that plaintiff was the owner of and possessed as his own property a large number of pine saw logs lying near the mouth of Onion river, and amounting to about one million feet, and that the defendants, on the 9th of August, 1874, wrongfully took and carried away about two hundred thousand feet of said logs and converted them to their own use. Answer, a general denial. No bill of exceptions was made, and the case came up upon the findings of

the court, which are fully stated in the opinion. The plaintiff had judgment for the value of the logs in question; and defendants appealed.

*S. U. Pinney*, for appellants:

The action being for the conversion of personal property, plaintiff must have had, at the time of the conversion, a complete property in the logs, either general or special, and the actual possession or the right to immediate possession. The contract was to manufacture out of raw material, and no property passed unless the logs were delivered. 2 Kent, 676; *Mucklow v. Mangles*, 1 Taunt., 318. Had the logs been delivered by *McDonald* to the plaintiff, with the intention of vesting the title and right of possession in plaintiff, and had they been accepted by him with the intention of taking possession as owner, the title would have vested in him without measurement. *Sewell v. Eaton*, 6 Wis., 490; *Morrow v. Reed*, 30 id., 81. But the logs here were not delivered, but remained on the premises of *McDonald*, and not even words had passed between the latter and the plaintiff as to the possession. The possession was, therefore, still in *McDonald*. *Menzies v. Dodd*, 19 Wis., 349. The logs had to be measured by the parties to ascertain the price; hence a present right of property did not pass to the plaintiff. 2 Kent, 663, 664; *Morrow v. Reed*, *supra*. The contract provided no time for payment or delivery; hence payment was a condition precedent to delivery. 2 Kent, 659. The place of delivery was specified, but not the time. Neither did the contract provide that placing the logs at the place of delivery mentioned should be a delivery to plaintiff, or should vest the title in him. Trover can not be maintained for goods contracted to be sold, before their identity, quantity and price are ascertained, or while anything remains to be done by the seller. 3 Phill. Ev. (5th Am. ed.), 447. Again, the contract was void by the statute of frauds. Tay. Stats., 1256. The fact that the logs were not procured or provided, or fit for delivery, does not take the case out of the

statute. *Hardell v. McClure,* 2 Pin. Wis., 289; 1 Chand., 271; *Mason v. The Whitbeck Co.,* 35 Wis., 164. Some part of the purchase money must be paid at the making of the contract, or the contract itself must be reaffirmed at the time payment is made.

The cause was submitted for the respondent on the brief of *Henry N. Setzer,* who argued that the facts found by the court constituted an absolute delivery, so as to pass the title to the logs to the plaintiff. *Bates v. Conkling,* 10 Wend., 390. The payment of nearly the entire amount due was an acceptance of the logs by the plaintiff. *Lansing v. Turner,* 2 Johns., 13; *Oliphant v. Baker,* 5 Denio, 379. Admitting, for the argument, that the logs were not measured until after the taking, the property in them would nevertheless pass to plaintiff at the time they were placed at the place agreed upon; for the contract included all the logs *McDonald* should get out during the winter; hence the scaling of the logs was not necessary for their identification. It is well settled that, where goods are identified, though it may be necessary to measure them in order to ascertain what would be the price of the whole at the rate agreed upon, the title will pass immediately to the purchaser. *Crofoot v. Bennett,* 2 Coms., 260. In this case *McDonald* himself identified every log by placing it at the point agreed upon. 2. The contract was not void. It was not for the sale of any chattel or personal property, but was merely executory. *McDonald* agreed to cut and haul logs during the winter; to "get out and furnish" logs. After getting out 500,000 feet, and notifying respondent, he informed him that he could "get out" and deliver a larger quantity, and the agreement is thereupon extended to cover all the logs cut and hauled by *McDonald.* It was not a contract to sell those logs, but an agreement by *McDonald* to perform work and labor in getting out and placing at a certain place the logs in dispute, which, at that time, had no existence in fact. This being so, and the contract providing that the

work and labor were to be performed within the year, the statute of frauds does not apply.

COLE, J. The questions in this case arise entirely upon the finding of the court below, there being no bill of exceptions. Upon the facts found, it seems impossible to hold that there was such a delivery and acceptance of the logs in controversy as would pass the title or ownership to the plaintiff. In order to sustain the action it must appear that there was a perfect and complete sale, so that the right of property in the logs and the risk of loss were transferred to the purchaser. It is hardly necessary to remark that an actual or constructive delivery was essential to a complete sale. The court found, in substance, that the plaintiff, in the fall of 1873, entered into a verbal contract with the defendant *John McDonald*, whereby it was agreed that *McDonald* should get out and furnish for him logs during the following winter or logging season, and deliver them at the lake shore, at the mouth of Onion river, near Bayfield; and that the plaintiff was to pay for the logs at the rate of $4.50 per 1000 feet. It was mutually understood at the time that *McDonald* could and would furnish and deliver on the contract a half million feet of logs; and, while he should be engaged in getting out the logs, the plaintiff agreed to let him have such goods and provisions as he might need, upon the credit of or in part payment for the logs. In the performance of the contract, *McDonald* got out logs estimated by him to amount to the stipulated quantity, and placed them at or near the place of delivery, and notified the plaintiff thereof; and at the same time informed the plaintiff that he could get out and furnish at the place of delivery a considerably larger quantity during the winter; whereupon it was agreed between the parties that the previous parol contract should extend to and apply to all the logs which *McDonald* could furnish and deliver during the season. Accordingly, during the remainder of the logging season, which lasted until

the 12th of March, 1874, *McDonald* went on and got out more logs, placing them at or near the point of delivery, which was upon land that he was in possession of as owner. The court found that the contract was silent as to when, where or by whom the logs should be scaled for the purpose of ascertaining the quantity furnished by *McDonald;* and it does not appear that any measurement has ever been effected. The court, however, found that there were at least 721,347 feet, and that some out of the whole lot, not included in this amount, were washed from the beach into the lake, and lost. The plaintiff advanced to *McDonald*, prior to the 12th of March, 1874, under the contract, goods, provisions and supplies to an amount of $1,300 or $1,400, and afterwards paid him, on account of the logs, in money and goods from time to time prior to the 9th day of August, 1874, the further sum of $1,700 and over. Prior to the 8th of August, 1874, the logs still being at the place where *McDonald* had left them, *McDonald* sold and delivered a portion of them to his codefendant, *Vaughn*, 160,000 feet of which *Vaughn* took on that day into his own possession and carried away, claiming the same as his own property. And the action is to recover for the conversion of this portion of the logs thus carried away.

These are the material facts stated in the finding, bearing upon the question of a sale and delivery of the property. And the question is, Do they show a complete and perfect sale, and do they warrant the conclusion of the court below that the logs became and were the property of the plaintiff as soon and as fast as they were placed by *McDonald* at the place of delivery designated in the contract? It seems to us the facts do not give rise to any such conclusion or presumption of law. It was doubtless competent for the parties to agree that placing the logs at the point designated in the contract should be a delivery, so that the right of property and the risk of loss should pass to the plaintiff. Then, as the logs were deposited at the proper place by the vendor, they would at once become

subject to the power and control of the purchaser, who might deal with them as he saw fit. Nor would the fact that the logs had not been scaled make any difference or prevent the sale from being complete, where it appeared from the contract that the parties intended that the title should pass as soon as they were placed or delivered at the proper place. *Morrow v. Reed*, 30 Wis., 81; *Morrow v. Campbell*, id., 90; and *Sewell v. Eaton*, 6 id., 490. " Although, ordinarily, so long as anything remains to be done by the seller, the goods are at his risk, yet this general rule may be overcome by the special facts of the case; and if it clearly appears to have been the intention of the parties that the property should be deemed to be delivered, and the title to have been passed, and especially if their acts be inconsistent, with any other view, the mere fact that something remains to be done will not govern such intention." Story on Sales, § 298 a. But this rule has no application to the case at bar. For the court does not find that the parties agreed that as fast as the logs were deposited at the place designated, the title should vest in the plaintiff, and that the property should be at his risk. And the facts found do not justify the inference that this was the contract. On the contrary, the facts fairly give rise to the presumption that the contract came within the application of the usual rules governing such agreements, and that the parties did not intend there should be a delivery and the title pass until the logs. were inspected by the plaintiff and the quantity ascertained by the proper measurement. We do not suppose the plaintiff was bound to accept all the logs which *McDonald* might deposit at the point designated, if any were unfit for use. The fair presumption is, that the parties intended the logs should be examined, or at least that they should be scaled and the quantity ascertained, and that until this was done there should be no delivery and acceptance of the property. In this case the goods were bulky and incapable of manual delivery; but there could be a constructive delivery which would operate as

a direct transfer of the ownership and right of property; and this was essential to a complete and perfect sale. And where there was a transfer of the right of property, there would necessarily be a transfer of the risk of loss, so that, if the logs were washed away or otherwise destroyed, the loss would be the loss of the purchaser. But we do not think the transaction in this case amounted to a complete sale, or was attended with any such legal consequences.

We have thus far considered the question whether the facts found showed a complete and perfect sale, assuming that the parol contract was valid. But it is obvious, unless the contract was fully executed by a delivery and acceptance of the logs, it would be within the statute of frauds. The subsequent payments would not have the effect to take the contract out of the operation of the statute, within the doctrine of *Bates v. Chesebro*, 32 Wis., 594; *Same Case*, 36 id., 636.

As the evidence in the case is not before us, we are reluctant to make a peremptory order in regard to the entry of judgment. We have therefore concluded to reverse the judgment, and send the case back with an intimation that the circuit court should grant a new trial if satisfied that the rights of the parties and the cause of justice will thereby be promoted; otherwise, to dismiss the complaint. This was the course pursued in the case of *Law v. Grant*, 37 Wis., 548–568; and we think it best to remit this case with a similar suggestion.

*By the Court.* — The judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.