GILL and another, Respondents, vs. BENJAMIN, Appellant.

*October 16 — November 3, 1885.*

*Sale of chattels: Severable contract: When title passes: Loss before measurement.*

G. agreed to sell and deliver to B. 1,000 cords of wood "to be delivered from G.'s pier [in Michigan] over the rail of the vessel . . . and to be delivered from time to time to B.'s vessel as wanted during the season of navigation; said wood to be piled as taken from vessel, and to be measured and paid for when piled on B.'s dock in Milwaukee." A cargo of the wood was lost after delivery over the rail of B.'s vessel at G.'s pier. In an action by G. to recover therefor at the contract price, *held:*

(1) Though the contract was executory when made, yet as each cargo was delivered on board B.'s vessel, the contract as to such cargo became an executed sale, and the title to such cargo vested at once in B. although it was not to be paid for until piled and measured on his dock.

(2) The piling and measurement having been rendered impossible, if not through B.'s fault, by the act of God, B. must pay for the cargo lost.

APPEAL from the County Court of *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The plaintiffs were engaged in the business of furnishing wood by contract at Gill's Pier, Michigan. The defendant was a wood and coal dealer at Milwaukee. March 1, 1884, the plaintiffs sent to the defendant the following written proposition, which was accepted in writing by the defendant, as follows:

"GILL'S PIER, MICH., March 1, 1884.

"*H. M. Benjamin, Milwaukee, Wis.*

"DEAR SIR: We will sell and deliver to you one thousand cords maple wood, to be delivered from Gill's Pier, Leelenaw county, Mich., over the rail of the vessel, at three dollars and twenty-five cents ($3.25) per cord; all the wood to be sound, body, marketable, maple wood, and to be delivered from time to time to your vessel as wanted during the season of navigation of 1884. The said wood to be piled as taken from vessel, and to be measured and paid for when piled on your dock in Milwaukee, Wis.

"Yours respectfully,

"WILLIAM GILL & SON."

"I accept the above.

"*Milwaukee, March 10, 1884.*          H. M. BENJAMIN."

The undisputed evidence was to the effect that the captain of the schooner Surprise, a vessel owned by the defendant, took the first cargo of wood from the plaintiffs' pier on June 30, 1884, and at various times thereafter chartered certain other vessels to transport cargoes to the defendant's dock in Milwaukee; that there were in all, aside from the one in dispute, six of these cargoes, aggregating 833¾ cords of wood, which were loaded at Gill's Pier, carried across Lake Michigan, unloaded, assorted, piled, and measured on the defendant's dock at Milwaukee, and then paid for; that two of the six cargoes were delivered and received after

October 7, 1884; that the defendant paid the freight for such transportation, and the expense of unloading, culling, and piling the wood, and part of the expense of measuring; that the plaintiffs paid the expense of placing the wood over the rail of the vessel at their pier, and employed and paid one Saveland, residing at Milwaukee, as their agent in doing whatever was necessary to be done in such measurement, and sending a statement thereof to the plaintiffs; that in the six cargoes so delivered twenty-six cords were treated as culls, and paid for at a less rate than the contract price; that good sound, marketable maple wood could be culled; that the per cent. of culls in the six cargoes mentioned was very small — unusually so; that the defendant always dealt fairly about culling wood; that the J. E. Bailey, chartered by the captain of the Surprise for that purpose, was present at Gill's Pier, Michigan, October 7, 1884, to get a cargo of wood for the defendant under the contract, when the plaintiffs delivered over the rail of the Bailey at that place 155 cords of " good sound, marketable, body maple wood, sawed ends," aside from the wood hereinbefore mentioned, which 155 cords of wood the vessel's crew, and the men they hired, piled and stowed on the Bailey; that the last was put on board about half past six in the evening of October 7, 1884; that the 155 cords did not constitute a full cargo for the Bailey, as she was capable of carrying 195 to 200 cords of such wood; that the captain thereof gave the plaintiffs a receipt therefor a day or two after in these words:

" Gill's Pier, Mich., October 7, 1884.   Shipped in good order and condition, by *William Gill & Son*, at the risk of whom it may concern, on board the J. E. Bailey, whereof Berenson is master, now in port at Gill's Pier, bound for Milwaukee, Wis., 155 cords maple wood.   Henry Berenson."

The night after the wood was so put on board the Bailey it began to rain quite heavily and the wind blew, and the

next morning the Bailey was ashore, and the 155 cords of wood was partly washed overboard, and the balance thrown overboard by those in charge of the vessel, and became a total loss. The captain thereupon telegraphed the defendant to the effect that the schooner Bailey was ashore with 155 cords of his wood. The plaintiff admitted that the wood placed on the Bailey was of the same kind and character in general as the other wood delivered, except the latter had a part cargo of dry wood.

This action is to recover for the 155 cords of wood at the contract price, and interest from November 1, 1884. Upon the facts stated the court directed a verdict for the plaintiffs, and from the judgment entered thereon the defendant appeals.

For the appellant there was a brief by *Markham & Noyes*, and oral argument by *Mr. Noyes*. They contended, *inter alia*, that the defendant was not liable because (1) by the express terms of the contract the wood was not to be paid for until it was piled and measured on defendant's dock. *Buffalo v. O'Malley*, 61 Wis. 257. (2) By the practical construction given to the agreement by the course of dealing between the parties, the price was not to be paid until the wood was culled in the usual way and the amount thereof answering to the kind and quality contracted for ascertained. (3) Until the culling, piling, and measurement of the wood on defendant's dock it could not be told how many cords of sound, body, marketable, maple wood was contained in the amount placed on the Bailey. (4) The title to the wood in question would not pass to the defendant until he had had an opportunity to inspect the wood and accept it as of the kind and quality contracted for. *Cooke v. Millard*, 65 N. Y. 369; *Bacon v. Eccles*, 43 Wis. 237; *Hoffman v. King*, 58 id. 317. (5) The plaintiffs did not put over the rail of the Bailey a vessel load, as their contract required them to do, and the defendant was not bound to

accept any less than a full cargo. Benj. on Sales, secs. 689, 690, 589 and note; *Barton v. Kane*, 17 Wis. 37–44. (6) The wood had not been *specifically identified* in the manner specified in the contract or according to the usual course of business under the same. *Winslow v. Leonard*, 24 Pa. St. 14; 62 Am. Dec. 357; Story on Sales, sec. 296; *Galloway v. Week*, 54 Wis. 608; *Hahn v. Fredericks*, 30 Mich. 225–6; *Wilkinson v. Holiday*, 33 id. 387. (7) Something remained to be done by the seller to the property after loading the vessel, to wit, to specify the property contracted for by assorting, piling, and measurement, and until that was done the title would not pass, and the wood would remain at the risk of the plaintiffs. Story on Sales, secs. 296–8; *Pike v. Vaughn*, 39 Wis. 499, 505; *Lingham v. Eggleston*, 27 Mich. 324.

*J. E. Wildish*, for the respondents, argued, among other things, that if property is *delivered*, the transfer of the control and dominion to the vendee shows an intention to pass the title, though something remains to be done to ascertain the price, and therefore the right of property passes. *Macomber v. Parker*, 13 Pick. 175; *Riddle v. Varnum*, 20 id. 280; *Olson v. Mayer*, 56 Wis. 557. The place of delivery was named in the contract, and it was the defendant's business to have his proper agent to receive the wood at that place, and he is now estopped to deny the authority of his agent, the captain, to receive and accept the wood. If the captain had any instructions to the contrary the plaintiffs are not bound thereby. *Kasson v. Noltner*, 43 Wis. 650; *Bouck v. Enos*, 61 id. 660; *Beaty v. Doggett*, 51 id. 231. The wood was received on board without objection as to kind or quality, and such objection cannot now be raised. A small amount of unmerchantable wood mixed in would not be a reason for non-acceptance. *Nisbet v. Gill*, 38 Wis. 657. The general rule is that property placed in the hands of the carrier becomes at once the property of the consignee.

*Ranney v. Higby*, 4 Wis. 154; *Krulder v. Ellison*, 47 N. Y. 36; *People v. Haynes*, 14 Wend. 546; Addison on Cont. sec. 587.

CASSODAY, J. The facts are undisputed. Does the law put the loss of the 155 cords of wood upon the plaintiffs or the defendant? The contract when made was executory. The plaintiffs thereby agreed to sell and deliver to the defendant 1,000 cords of wood. The wood was to be of the kind and quality named in the contract. No particular 1,000 cords of wood was then designated nor described therein. It was all "to be delivered from Gill's Pier . . . over the rail of the vessel." In was, moreover, "to be delivered from time to time" at that place, "*as wanted*, during the season of navigation of 1884." The Bailey was chartered by the captain of the defendant's vessel, and for the purposes of the contract must be regarded the same as though it were the property of the defendant. True, each cargo was "to be piled on the defendant's dock in Milwaukee" as taken from the vessel, and to be measured and paid for at the price named when so piled. This raises the question whether, by the terms of the agreement, the title of each cargo became vested in the defendant when delivered to and "over the rail of the" *defendant's vessel* at Gill's Pier, or remained vested in the plaintiffs while being carried across the lake on the defendant's vessel, and until taken from his vessel and piled on his dock in Milwaukee. If the title to each cargo remained vested in the plaintiffs until piled on the defendant's dock in Milwaukee, then did it continue to be vested in them until measured? and if until measured, then did it remain vested in them until paid for? The piling on the dock was apparently to facilitate the measurement, and the measurement was apparently to ascertain the amount to be paid. But can it be that the title of a cargo so piled upon the defendant's dock and measured did

not become vested in the defendant until he had paid for it? And if it became vested in him before he paid for it, then why not before it was measured or piled on his dock or taken from his vessel?

The words "sell and deliver *to you* . . . from Gill's Pier, . . . over the rail of the vessel," clearly desig-nated that as the place of delivery. On the delivery of any cargo being made in that way at that place, the possession of *such cargo* was manifestly intended by the contract to immediately pass entirely from and beyond the control of the plaintiffs into the absolute and exclusive possession and control of the defendant. The vessel upon which such cargo was so placed belonged to the defendant, and was controlled by his captain; or else the vessel was chartered by his captain for his service in the transportation of such cargo, and hence was, so far as the contract was concerned, his vessel for that voyage for the purposes of such transportation. The plaintiffs had no control over the management of the vessel, nor the direction in which it should go, nor the port at which it should land. The contract, though executory when made, yet as it contemplated a delivery from time to time, as wanted, in *separate* cargoes, each of which was to be paid for as indicated, it was clearly severable. *Scott v Kittanning Coal Co.*, 89 Pa. St. 231; *Goodwin v. Merrill*, 13 Wis. 737; *Sawyer v. C. & N. W. R. Co.* 22 Wis. 385. This being so, it necessarily follows that, as each cargo was deliv-ered on board the defendant's vessel, the contract as to such cargo became an executed sale, so far as the plaintiffs were concerned, unless the mere fact that their man was expected to participate in the measurement of such cargo when piled on the defendant's dock prevented the title to such cargo from becoming vested in the defendant until so measured. *Morrow v. Reed*, 30 Wis. 81; *Morrow v. Campbell*, 30 Wis. 90; *Fletcher v. Ingram*, 46 Wis. 191; *Scott v. Kittanning Coal Co. supra.*

Such being the wording and effect of the contract, we must hold that each cargo, on being delivered " over the rail of the vessel " sent for that purpose by the defendant or his captain, became at once the property of the defendant, unless the stipulation for piling and measuring on the defendant's dock, before payment, prevented the title from so vesting in him. Of course the 155 cords, being lost, was not so piled on the defendant's dock in Milwaukee, nor measured; and therefore it is claimed there is no obligation to pay. The contract contemplates no such loss. It contains no stipulation as to any one taking the risks of the perils of the lake. Without such stipulation, such risk would necessarily fall upon the owner of the cargo at the time of loss. It will be observed that the contract contains no stipulation for any inspection or sorting of the wood on the defendant's dock. The wood was to be taken from the vessel, piled and measured on the dock; but it is silent as to who should do the piling or the measuring. It seems to be conceded that the defendant was to do the piling. It may be inferable that the plaintiff's man was expected to witness or participate in the measurement of every cargo, as he did of each that was so piled on the dock. Was such piling and measuring a condition precedent to the vesting of the title thereof in the defendant? Where the manifest intention of the parties is to transfer the title, the sale may be complete, notwithstanding the property is yet to be measured, and the amount of the price yet to be ascertained. *Sewell v. Eaton,* 6 Wis. 490; *McConnell v. Hughes,* 29 Wis. 537; *Morrow v. Campbell,* 30 Wis. 90; *Fletcher v. Ingram,* 46 Wis. 191. So held where, by the agreement, the vendee was to have the title to saw-logs as soon as the vendor deposited them in a certain place. *Morrow v. Reed,* 30 Wis. 81. These principles are fully recognized and sanctioned in *Pike v. Vaughn,* 39 Wis. 505, relied upon by counsel for the defendant. Thus, in *Dixon v. Baldwen,* 5 East, 175, A. & B., traders in London,

ordered goods from the defendants at Manchester to be sent to M. & Co., at Hull, for the purpose of being afterwards sent to the correspondents of A. & B., at Hamburg, and the defendants sent the goods to M. & Co. at Hull to be shipped by them to Hamburg, as usual, pursuant to the order; and it was held, as between the buyer and seller, the right of the defendants to stop as *in transitu* was at an end when the goods came to the possession of M. & Co. at Hull; for they were for this purpose the appointed agents of the vendees, and received orders from them as to the ulterior destination of the goods; and the goods, after their arrival at Hull, were to receive a new direction from the vendees. To the same effect, *Kendal v. Stevens*, L. R. 11 Q. B. Div. 356; *Ex parte Miles*, L. R. 15 Q. B. Div. 39.

We must hold that the intention of the parties, as expressed in the contract, was that the title to each cargo should immediately vest in the defendant on being placed on board of the defendant's vessel at Gill's Pier. True, the contract provides, in effect, that each cargo was to be "paid for when piled on" the defendant's dock in Milwaukee, and that the cargo of 155 cords was never so piled on that dock. But the undisputed evidence shows that the failure to so pile on the defendant's dock was in no way attributable to the plaintiffs. It may be conceded, also, that it was not the fault of the defendant nor his agents, although the cargo was in the exclusive possession of the defendant at the time it was lost. Assuming that the loss of the cargo was not the fault of the defendant's agents, then such piling on the defendant's dock was rendered impossible solely by the act of God, and hence the defendant, upon its loss, thereupon became liable for its value. *Powers v. Dellinger*, 54 Wis. 389; *Nugent v. Smith*, L. R. 1 C. P. Div. 423; 2 Benj. Sales, § 861.

It appears from the undisputed evidence that the 155 cords of wood lost was of the kind and substantially of the

quality called for in the contract, and the same as the other wood which had been received by the defendant without any objection, although a deduction was made in the price of twenty-six cords called culls. The title to the 155 cords of wood having become vested in the defendant when the same was placed on board of the Bailey, and the captain of the Bailey being in law the agent of the defendant for the purpose of receiving the wood, and having received the same on board the Bailey without any objection as to quality, and the wood having been lost, as indicated, it may be very doubtful whether any damages could be recovered in this action, even had there been a counterclaim for such damages in the answer. *Locke v. Williamson*, 40 Wis. 377. But here there was no such counterclaim, and hence the question need not be determined. The defendant does claim damages by way of counterclaim, however, for the failure to deliver the balance of the 1,000 cords called for by the contract, including the 155 lost. But the contract only required that the plaintiffs should deliver the wood at their pier to the defendant's vessel from time to time, " as wanted, during the season of navigation of 1884." There is no evidence of any failure to deliver any wood " as wanted " by the defendant during that season, nor of any unreasonable delay in furnishing wood to any vessel calling for it at the plaintiff's pier in behalf of the defendant. We discover no ground upon which the defendant is entitled to any damages under his counterclaim. *Simpson v. Crippin*, L. R. 8 Q. B. 14; *Higgins v. D., L. & W. R. Co.* 60 N. Y. 553; *Scott v. Kittanning Coal Co.* 89 Pa. St. 231; *Haines v. Tucker*, 50 N. H. 307.

*By the Court.*— The judgment of the county court is affirmed.