ALLEN, Appellant, vs. CITY OF GREENWOOD, Respondent.

*October 25, 1911—January 9, 1912.*

*Taxation: Ownership of manufacturers' stock: Sales: When title passes: Delivery: Statute of frauds: Sunday contracts: Board of review: Changing valuation: Appeal: Reversal: De minimis.*

1. Under oral contracts of sale, covering all staves cut by the vendors during the season, such staves were to be delivered at the railway track in the city of G., there to be inspected, culled, and counted by the vendee, who lived in another town but intended to ship them from G. to his customers.   The staves were all hauled to the track and payments made thereon before May 1st, but were not inspected, counted, and culled until after that date.   *Held* that, as no selection was to be made by the vendee, the title passed to him when they were delivered at the track; hence the staves were properly assessed to him in G., he being the owner thereof on May 1st within the meaning of sec. 1044, Stats. (Supp. 1906).

2. Even if the contracts, being oral, were originally void under the statute of frauds, they were validated prior to May 1st by delivery and partial payment.

3. Although one of the contracts was void because made on Sunday, a new and valid contract was made by payments on secular days in accordance with the original agreement and by the execution of such agreement as originally made.

4. The fact that in one case the vendor was to pay the expense of loading staves on the cars and that the loading did not take place until May 12th, did not defer the passing of the title until that date.

5. The fact that the board of review, without taking evidence, changed the assessed valuation of property from $2,130.85 to $2,222.18, thereby increasing the tax thereon about $1.50, is not sufficient to warrant the supreme court in reversing a judgment sustaining the tax, especially where no substantial injustice is shown.

BARNES, J., WINSLOW, C. J., and MARSHALL, J., dissent in part.

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

This action was brought to recover taxes levied upon personal property alleged to have been illegally assessed against the plaintiff and collected under protest. The action was commenced in justice's court, and on appeal tried in the circuit court without a jury, where judgment was entered dismissing the plaintiff's complaint, from which this appeal was taken.

The court below found as follows: That during all the times mentioned in the complaint plaintiff was a resident of the village of Loyal, Clark county, Wisconsin, and never was a resident of defendant city; that in the year 1905 the assessor and taxing officers of the defendant city assessed to plaintiff personal property valued at the sum of $2,222.18 as being personal property owned by plaintiff liable to taxation in said city on the 1st day of May, 1905; that thereafter said assessment of personal property was carried out on the tax roll of said city for the year 1905 as an assessment against plaintiff, and the amount of $35 taxes upon said assessment was carried out upon the tax roll of said city for 1905, and said personal property tax, with a warrant for the collection thereof in due form of law annexed thereto, was in December,

1905, delivered to the city treasurer for collection, said treasurer by said warrant and tax roll being directed and commanded to collect said $35 tax from plaintiff; that thereafter and during the month of February, 1906, said city treasurer demanded of plaintiff that he pay said tax, which plaintiff refused to do, and thereafter and on or about the 15th day of February, 1906, said treasurer threatened to levy upon and sell the property of plaintiff to satisfy said tax, whereupon on the 15th day of February, 1906, plaintiff, in order to protect his property from levy and sale, was compelled to pay and did pay under protest said personal property tax, which sum of $35 said treasurer duly turned into the funds in the city treasury; that such assessment of personal property was for and on account of a quantity of staves piled upon the right of way of a certain railroad company within the limits of said city; that the plaintiff had purchased said staves from various parties and they were hauled and delivered to plaintiff within the limits of said city on and prior to the 1st day of May, 1905; that the plaintiff was the lawful owner of said staves on the 1st day of May, 1905, and the legal title thereto was in him on that day; that the assessment was made by the assessor upon said staves, and as made by the board of review was a valid and legal assessment of the personal property owned by plaintiff on and after May 1, 1905, situated within the corporate limits of the defendant city; that by the payment of said sum of $35 taxes so assessed and levied plaintiff paid the lawful tax assessed on said staves, and he has not made it appear to the court that he has paid more than his equitable share of the taxes levied in said city.

As conclusions of law the court found that the plaintiff was not entitled to the relief demanded in his complaint, but that said complaint should be dismissed with costs to be taxed in favor of defendant.

*George L. Jacques,* for the appellant.

*W. J. Rush,* for the respondent.

KERWIN, J.   The facts in this case are substantially un-
disputed.   It was stipulated on the trial that $35 taxes were
collected from plaintiff by the city treasurer of defendant
city and paid into the city treasury, the same being taxes
levied upon merchants' and manufacturers' stock, namely,
oak staves.   It was also stipulated that, so far as plaintiff's
assessments and property were concerned, no evidence was
taken by the board of review.

It further appears that the staves in question were assessed
at $2,130.85, and upon the personal property statement
signed by the assessor appeared an indorsement purporting
to be made by the board of review changing the assessed
valuation to $2,222.18.   The evidence shows that no other
records could be found in the office of the city clerk relating
to this assessment, except the tax roll, from which it appeared
that personal property consisting of oak staves was assessed
against plaintiff, valued by the board of review at $2,222.18,
against which taxes were assessed and carried out in the sum
of $33.33.   It was also conceded that the tax roll was duly
in the hands of the city treasurer when he collected the tax
from plaintiff.   The plaintiff was a resident of the village
of Loyal, and not a resident of the defendant city.   The rec-
ord further shows that plaintiff was a dealer in staves and
shipped them from railway stations directly to consumers,
one of the stations being the city of *Greenwood,* defendant;
that during the winter of 1904 and 1905 appellant bought
staves from various parties which were landed at the railway
station in the defendant city.   The appellant was assessed
for the staves he had piled at the station in the defendant
city on May 1, 1905, being staves bought during 1904 and
1905 from three parties, namely, Fricke & Rossman,
F. J. Blecha, and William Huntzicker, except one carload of
about 8,000 shipped out in April, 1905.   The amount paid
for the staves at the station on May 1, 1905, to the three par-
ties named was $2,208.31.

The contracts for the purchase of the staves were verbal and covered all staves cut during the season by the parties named. They were to be delivered at the railway track in the defendant city during the winter of 1904 and 1905 at a specified price per thousand. Appellant was to cull, pile, and count them. The staves were all hauled to the landing in defendant city prior to May 1, 1905. The culling, inspecting, and piling was done by appellant in accordance with the contract. Payments were made from time to time during the winter. The agreements of purchase with the parties above mentioned were substantially the same, except that when the contract with Fricke & Rossman was made February 26, 1905, which was Sunday, part of the staves were piled at the railway landing, and the agreement provided that said Fricke & Rossman were to haul the rest of the staves onto the landing, subject to inspection, culling, and counting by the plaintiff, and to load or stand the expense of loading them on cars. On the day of purchase of the Fricke & Rossman staves plaintiff made a payment on them, and during the winter and before May 1st other partial payments were made. During the last half of May they were sorted, counted, inspected, and paid for, and Fricke & Rossman paid the expense of loading them on the cars. The contracts for the Huntzicker and Blecha staves were made on secular days, and the staves were not to be delivered on cars, and were all delivered at the railroad track before May 1, 1905.

The contentions of appellant for reversal are (1) that the title to none of the property passed to plaintiff until after May 1st, therefore it was not assessable to plaintiff; (2) that as to the Fricke & Rossman staves no contract, except the Sunday agreement, which was void, was made until after May 1st, therefore no title passed until after May 1, 1905; (3) that the board of review, without evidence, raised the plaintiff's assessment $91.33, and that the proportionate amount of taxes assessed against plaintiff on the amount that his assess-

ment was raised was illegal, and that he should recover that amount in any event.

The court below found that the plaintiff had purchased the staves in question and that they were delivered to him in defendant city on and prior to the 1st day of May, 1905, and that plaintiff was the lawful owner on said day.

We think this finding is supported by the evidence and that the plaintiff was the owner of the staves on the 1st day of May, 1905, and therefore they were properly assessed to him in the defendant city. Secs. 1040, 1044, Stats. (Supp. 1906). It is quite clear, we think, upon the evidence that there was a delivery when the staves were piled at the landing or railway track in the defendant city in accordance with the agreements. Nothing further was to be done by plaintiff, except in the case of the Fricke & Rossman staves the vendors were to pay the expense of loading, which they did, though after May 1st. After the delivery at the railway station, which was before May 1st, plaintiff was to do the inspecting, culling, and counting. So we are of opinion that the plaintiff was the owner of the staves on May 1, 1905, within the meaning of sec. 1044, Stats. (Supp. 1906). *Merrill v. P. B. Champagne L. Co.* 75 Wis. 142, 43 N. W. 653; *State ex rel. Edward Hines L. Co. v. Fisher,* 129 Wis. 57, 108 N. W. 206.

It is argued by appellant that because the staves were to be inspected, counted, and culled the title did not pass to plaintiff until this was done, which took place after May 1st. This contention was held against plaintiff by the court below, and we think rightly so upon the evidence. *Galloway v. Week,* 54 Wis. 604, 12 N. W. 10; *Gill v. Benjamin,* 64 Wis. 362, 25 N. W. 445. There was no selection to be made. All the merchantable staves were sold, and it seems quite clear from the evidence that it was the intention of the parties that the title should pass when the staves were delivered at the railway track. *State ex rel. Vilas v. Wharton,* 117 Wis. 558, 94 N. W. 359; *Pike v. Vaughn,* 39 Wis. 499; *Mackellar v. Pills-*

*bury,* 48 Minn. 396, 51 N. W. 222; *Weld v. Cutler,* 2 Gray, 195.   Even conceding, as contended by plaintiff, that the contracts being verbal were void under the statute of frauds, the staves were all delivered before May 1, 1905, and payment made during the time of delivery; hence the contracts became valid upon delivery and partial payment before May 1st. *Amson v. Dreher,* 35 Wis. 615; *Schmidt v. Thomas,* 75 Wis. 529, 44 N. W. 771; *Kerkhof v. Atlas P. Co.* 68 Wis. 674, 32 N. W. 766.

But appellant claims that the acceptance of a carload of the Huntzicker staves in April, 1905, was under a special contract and did not amount to an acceptance under the contract of purchase; but the evidence does not support this contention.   Moreover, other partial payments were made upon the Huntzicker staves, as well as upon the Fricke & Rossman and Blecha staves, before May 1, 1905.

As to the Fricke & Rossman staves it is claimed that the contract was void because made on Sunday.   But this agreement, though void, was subsequently and before May 1, 1905, renewed and validated upon a secular day by payments in accordance with the original agreement and execution of the agreement as originally made; therefore a new, valid contract was made.   *Schmidt v. Thomas, supra; Hopkins v. Stefan,* 77 Wis. 45, 45 N. W. 676; *Williams v. Lane,* 87 Wis. 152, 58 N. W. 77; *Melchoir v. McCarty,* 31 Wis. 252; *Ziemer v. C. G. Bretting Mfg. Co.* 142 Wis. 224, 125 N. W. 318.

The fact that the board of review raised the valuation a small amount without taking evidence, which raise would increase the tax about $1.50, is not sufficient to warrant us in disturbing the judgment below, especially in view of the fact that there is no proof of substantial injustice.   *McIntyre v. White Creek,* 43 Wis. 620; *Hixon v. Oneida Co.* 82 Wis. 515, 52 N. W. 445.

Upon the record we think it clear that the judgment below

was right and should be affirmed. The staves were all delivered at the place agreed upon before May 1, 1905, and nothing further remained to be done by the vendors except to agree upon the count made by the appellant, and in the Fricke & Rossman case pay for loading on cars. The count was assented to by the vendors, the expense of loading the Fricke & Rossman staves paid by them, and the balance due upon the contracts paid during the month of May, 1905.

*By the Court.*—Judgment affirmed.

BARNES, J. (*dissenting*). I dissent from so much of the decision of the court as holds that the staves purchased by plaintiff from Fricke & Rossman were assessable to him. The price paid for these staves was $765.73. These parties, acting under their void Sunday contract, hauled their staves to the railroad track, where they were piled, prior to May 1st, and the plaintiff acting thereon made some payments on the staves from time to time. There was no proof that these parties ever met or ever renewed the promises originally made. There could be no ratification of the void Sunday contract. The parties might make a new agreement which would be binding. The plaintiff might accept the staves, in which event he would be liable, not for the contract price, but on *quantum meruit*. The authorities dealing with Sunday contracts were recently reviewed by this court in *King v. Graef*, 136 Wis. 548, 117 N. W. 1058, where it is said: "Neither can a contract made on Sunday be validated by proving acts tending to show a ratification, because such a contract is void and is not susceptible of ratification." A number of cases decided by this court are cited to sustain and do sustain the proposition. As I view it, there is not a shred of evidence in the case to show any acceptance of this lot of staves by the plaintiff until after May 1st. The opinion concedes, as I read it, and advisedly as I believe, that unless the plaintiff held the title to these staves on May 1st they were

not assessable to him.   I think the plaintiff had not accepted the staves until after May 1st, and had acquired no title thereto under his void Sunday contract.

Furthermore, had the contract been made on a secular day, a part payment of the purchase price would not take it out of the statute of frauds unless there had been a delivery and acceptance of some part of the staves sold.   *Bates v. Chesebro,* 32 Wis. 594; *Paine v. Fulton,* 34 Wis. 83; *Hanson v. Roter,* 64 Wis. 622, 25 N. W. 530; *Pike v. Vaughn,* 39 Wis. 499; *Crosby H. Co. v. Trester,* 90 Wis. 412, 63 N. W. 1057; *Amson v. Dreher,* 35 Wis. 615; *Becker v. Holm,* 89 Wis. 86, 61 N. W. 307; *Prairie Grove C. Mfg. Co. v. Luder,* 115 Wis. 20, 89 N. W. 138; *Kerkhof v. Atlas P. Co.* 68 Wis. 674, 32 N. W. 766.   There having been no acceptance of the staves until after May 1st, the title remained in the vendors, because the contract was void under the statute of frauds.

But assuming that there could be a ratification of the void Sunday contract, or that a new contract was subsequently made prior to May 1st, and that the statute of frauds had no application to the case, there is another reason why this judgment should not be affirmed, unless the court desires to overrule a number of our former decisions.   There is no dispute as to what the alleged contract was, between Fricke & Rossman and the plaintiff.   It was very brief.   Rossman testified that he agreed to deliver the staves on board cars, which he contracted to sell at a stated price per hundred, and that the same were to be counted and culled by plaintiff as they were being loaded.   This loading, counting, and culling did not begin until May 12th.   It is true that an arrangement was made at some time, when it does not appear, whereby plaintiff agreed to do this loading, Fricke & Rossman, however, to pay the expense thereof.   Now, the status of the title to this property was not changed because the vendors hired someone to do the loading for them instead of doing it themselves.   It is often a vexed question as to when the title to

personal property passes, and when it does pass depends upon the intention of the parties. This court has had many cases before it identical with the one we are considering, where the vendor agreed to deliver the property bargained for on board cars. In these cases this court has uniformly held that, in the absence of some specific agreement to the contrary or in the absence of some peculiar facts which tend to show an intention to pass title at some other time, title passed when the article was delivered on board cars, and not before. *Badger State L. Co. v. G. W. Jones L. Co.* 140 Wis. 73, 85, 121 N. W. 933; *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820; *Fromme v. O'Donnell,* 124 Wis. 529, 103 N. W. 3; *Murphy v. Sagola L. Co.* 125 Wis. 363, 103 N. W. 1113; *Engeldinger v. Stevens,* 132 Wis. 423, 112 N. W. 507; *John O'Brien L. Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *State ex rel. Pittsburgh C. Co. v. Patterson,* 138 Wis. 475, 120 N. W. 227; *Southern F. & G. Co. v. McGeehan,* 144 Wis. 130, 128 N. W. 879. There was not a solitary fact or circumstance shown in this case, that I am able to find, which brings the case at bar without the rule of the cases cited. There was neither a delivery to nor an acceptance by the plaintiff of this lot of staves until they were loaded on cars. That the staves were assessable to the party who held the title thereto on May 1st is held in *Day v. Pelican,* 94 Wis. 503, 69 N. W. 368; *State ex rel. Vilas v. Wharton,* 117 Wis. 558, 94 N. W. 359; *State ex rel. Pittsburgh C. Co. v. Patterson, supra;* and other cases.

WINSLOW, C. J., and MARSHALL, J., concur in the foregoing dissenting opinion.