OSHKOSH WATER WORKS COMPANY, Appellant, vs. RAILROAD COMMISSION, Respondent.

*May 5—June 1, 1915.*

*Public utilities: Purchase by cities: Valuation: Elements of value: Investment: Earnings: Going value: Reproduction cost: Water pipes laid before paving: Decision by railroad commission: When set aside: Action: Finding by court: Burden and degree of proof: Outstanding bonds: Premium: Order for payment: Taxes assessed before purchase, by whom payable: Constitutional law: Provision for annual tax: Harmless error.*

1. In the valuation of a public utility for condemnation or sale purposes, the essential elements usually to be considered are the present value of its physical property, the present and prospective reasonable earnings of its business, the going value thereof, and the amount of money presently needed to put the plant in good condition.

2. In determining the value of the physical property due regard should be had to the original cost thereof, the reproduction cost, the amount of depreciation, and the amount of obsolescence.

3. The "going value" of a utility is that part of its value due to its having an existing established business. In fixing its amount the actual cost of establishing the utility in question as modified by what under all the circumstances ought to have been its reasonable cost, as well as the reasonable cost of establishing like enterprises under similar conditions, may be considered.

4. Since the valuation of a utility cannot be reduced to absolutely fixed rules or to the mere appraisal of parts whose sum equals its value, but involves the exercise of sound and competent business judgment upon many elements of uncertain and debatable value, grave errors in arriving at and seriously affecting the final result must be shown before a valuation by the railroad commission will be set aside.

5. In determining the value of a utility a consideration of reproduction cost is profitable and proper only in so far as it will aid in determining the ultimate fact to be ascertained, namely, the just present value of the utility as an entity.

6. Generally, cost less depreciation will fairly represent value; for that reason cost is an important element in determining value, and reproduction cost is also important, but there may be elements that enter into both cost and reproduction cost that do not enhance value.

7. Thus, in determining the value of waterworks, the extra cost of reproducing under paved streets water pipes· which were laid before the paving was done, was in this case properly disregarded.

8. The original investment is a valuable aid in determining the present value of a utility, but it is not controlling.

9. Earnings, if derived from a reasonable rate, are important factors. in determining the value of a utility, but are not in themselves conclusive.

10. In an action under sec. 1797m—83, Stats. 1913, to review an order of the railroad commission fixing the compensation to be paid by a city for the taking of the property of a public utility, the finding by the trial court that the compensation fixed by the commission is "lawful" is a finding that it is just and adequate, and shows that the court passed upon the question of value as. an original question of fact.

11. Under sec. 1797m—84, the compensation fixed by the commission must stand unless the plaintiff "shall establish to the full satisfaction of the court . . . that such compensation is unlawful," etc., and this does more than merely throw the burden of proof upon plaintiff, since it requires more than a preponderance of the evidence.

12. It is the property of a utility which is to be purchased by a city, not a mere equity of redemption therein; and where bonds secured by a trust deed of the property were outstanding when the compensation was fixed, but might be called at any time upon payment of a premium, and the compensation fixed was more than sufficient to pay the full amount of the bonds including the premium, the railroad commission properly ordered the company to call in and cancel the bonds and turn the utility over to the city free from all liens.

13. No rights of the bondholders being adversely affected by such order, they were not necessary parties to the proceeding.

14. The company in such a case is not entitled to receive the compensation without calling in the bonds. When it accepted an indeterminate permit it agreed to sell to the city at any time the latter might elect; and the city is under no obligation to assume the company's obligations or to pay anything more than the full value of the utility.

15. The property of a waterworks company being, under sec. 51.43 (p. 845) Stats. 1913, deemed personal property for purposes of taxation, the taxes thereon based upon the assessment made on May 1st were properly payable by the company, not by the city, although the city purchased the property and took possession thereof in the following October.

16. The provision of sec. 3, art. XI, Const., that a city acquiring a pub-
lic utility shall provide for the collection of a direct annual tax
to pay therefor, is for the protection of the utility; and when it
appears that the city has the money on hand and has made law-
ful tender thereof to the utility, a noncompliance with the pro-
vision becomes a harmless error.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge.   *Affirmed.*

Action under sec. 1797m—83, Stats. 1913, to set aside an
order of the *Railroad Commission* fixing the amount of com-
pensation to be paid by the city of Oshkosh to the plaintiff for
its property and the terms of payment.   The plaintiff was
granted a franchise June 18, 1883, to erect and maintain a
system of waterworks in the city of Oshkosh.   It operated
under such franchise till January 18, 1910, when it volun-
tarily surrendered it for an indeterminate permit under the
Public Utility Law (ch. 499, Laws 1907: secs. 1797m—1 to
1797m—109, Stats. 1913).

In 1902 bonds payable in twenty years and secured by a
trust deed upon plaintiff's property were issued.   The deed
contains a provision that if plaintiff calls these bonds due it
shall pay the bondholders a premium of seven and one-half
per cent. upon the face of the same.   At the time this action
was begun such bonds to the amount of $424,000 were out-
standing.   In November, 1912, the city of Oshkosh voted to
purchase the property of the plaintiff, and the *Railroad Com-
mission* took jurisdiction of the matter as provided by sec.
1797m—82.   On September 27, 1913, it filed an order pro-
viding:

"(1) That the just compensation to be paid to the *Osh-
kosh Water Works Company* for the taking of the property
of said company, actually used and useful for the convenience
of the public, by the city of Oshkosh, which property consists
in the items above described, excepting, as stated, the stock
and material on hand, and the additions to the plant that
have been made since January 1, 1913, be and the same is

hereby fixed at five hundred and twenty-five thousand dollars ($525,000).

"(2) That in addition to the above compensation, the materials and supplies on hand at the date of the taking of the said plant and the new additions to the plant that have been made since January 1, 1913, be paid for by the said city of Oshkosh at such price as may be agreed upon by the parties themselves, or, in case the parties fail to agree upon the price, at such price as the *Commission* shall fix by supplemental order.

"(3) That the said city of Oshkosh pay to the said *Oshkosh Water Works Company* the compensation herein fixed, and the price of said materials and supplies and said additions to said plant, within six months of the date hereof, with interest at the rate of six per cent. per annum from the date of taking possession of said plant by said city until the same is fully paid."

To review such order the plaintiff brought this action in the circuit court for Dane county pursuant to sec. 1797m—83. The trial court found as facts: "(1) That on September 27, 1913, the above named defendant, in a proceeding duly had before said *Commission,* fixed the sum of $525,000 as the fair compensation to be paid by the city of Oshkosh to the plaintiff, as the owner of the Oshkosh waterworks, for the property of the plaintiff used and useful in supplying the city of Oshkosh and its inhabitants with water. (2) That the compensation so fixed by said *Commission* is lawful, that the terms and conditions of the sale fixed by said *Commission* are reasonable, and that none of said terms and conditions are unreasonable."

As a conclusion of law the court found: "That judgment be entered confirming the award of the *Commission,* that neither party recover costs, but that plaintiff pay the fees of the clerk of the above entitled court."

From a judgment entered accordingly the plaintiff appealed.

For the appellant there was a brief by *Kreutzer, Bird,*

*Rosenberry & Okoneski,* attorneys, and *John M. Olin,* of counsel, and oral argument by *Claire B. Bird.*

For the respondent there was a brief by the *Attorney General* and *Walter Drew,* deputy attorney general, attorneys, and *R. A. Hollister,* corporation counsel for the city of Oshkosh, of counsel, and the cause was argued orally by *Mr. Drew, Mr. H. I. Weed, Mr. Hollister,* and *Mr. E. J. Dempsey.*

VINJE, J.  The validity of the judgment is challenged (1) because it failed to adjudge that the sum of $525,000 is less than just compensation for the taking of the property appraised; (2) because the trial court should have passed upon the question of value as an original question of fact, giving the decision of the *Commission* the effect of only casting upon plaintiff the burden of proof, if not already there; (3) because, construing the statute as the court did to authorize the appraisal of the whole property, the order should have been adjudged void for want of jurisdiction in the *Commission;* (4) because the *Commission* should have valued plaintiff's equity of redemption by itself and ordered its value paid unconditionally to the plaintiff, or (5) it should have made some other provision so that the plaintiff could obtain its money without being required to mature its bonds by paying a premium thereon, they being worth in the market not more than their face; (6) because the order did not provide for crediting plaintiff with the sum of $8,481.25 taxes levied against its property for the year 1913, the city having taken possession thereof October 4, 1913; and (7) because the order of the *Commission* should have fixed a time within which the city should be required to pay or provide for the payment of the money before it could take possession thereunder.  The first four assignments of error attack the validity of the whole judgment, while the last three claim the order is unreasonable in not making the provisions mentioned and call only for a modification of the judgment.

In the proper valuation of a public utility for condemnation or sale purposes certain main elements usually present in every case may legitimately be considered. These are the present value of its physical property; the present and prospective reasonable earnings of its business; the going value thereof; and the amount of money presently needed to put the plant in good condition. There may be other elements, but these are generally the essential ones. In determining the value of the physical property due regard should be had to the original cost thereof; the reproduction cost; the amount of depreciation; and the amount of obsolescence. The going value of a utility is that part of its value due to its having an existing established business. In fixing its amount the actual cost of establishing the utility in question as modified by what under all the circumstances ought to have been its reasonable cost, as well as the reasonable cost of establishing like enterprises under similar conditions, may be considered. The element of going value is usually one whose quantum is not easily subject to mathematical demonstration. That in a measure is true of all the other elements of value. And it is equally true that the elements of value spoken of, or others if there be any, may not in their aggregate represent the just value of the utility. Such value may be more or less than the aggregate of the sum of the elements found. And it may be that some elements that enter into the main elements of value above stated should be entirely eliminated in fixing the just value of the utility as an entity. Its value must be fixed as such. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557; *Appleton W. W. Co. v. Railroad Comm.* 154 Wis. 121, 142 N. W. 476. It is because the valuation of a utility cannot be reduced to absolutely fixed rules, or to the mere appraisal of parts whose sum equals its value, that the subject is one upon which honest and competent men differ. In the last analysis it is the exercise of a sound and competent business judgment upon many elements of uncertain and

debatable value considered as a business entity.    Hence grave errors in arriving at and seriously affecting the final result must be shown before a valuation of the *Commission* can be set aside.

In the present case it is not claimed that the *Commission* did not take into account the main elements of value, but it is argued that an entirely inadequate amount was placed upon going value or else the *Commission* erroneously failed to consider an item of about $54,000 extra reproduction cost of laying pipes under pavements.    In their decision the *Commission* present a table showing the cost of reproduction and the present value of the different groups into which they divide the plant.    They find the reproduction cost to be $514,215 and the present value to be $453,547.    These items include an item of $1,267 for reproduction cost of laying pipes under paving actually disturbed by the utility in laying their pipes, but do not include an item of about $54,000 reproduction cost of now disturbing paving over pipes laid before there was any paving.    The *Commission* in discussing the table say:

"By including the reproduction cost and present value of all paving now existing over mains, whether disturbed or not, the cost of reproduction for the first six groups becomes $569,510, present value becomes $507,749.    These of course must include allowance for overhead charges.    The totals for the property therefore become $579,808 cost of reproduction, and $510,953 present value."

From this statement plaintiff argues that in fixing the value of the plant as an entirety the *Commission* placed a present value of $510,953 upon the physical property and hence allowed only the difference between such sum and the total valuation of $525,000 for going value, an entirely inadequate sum it is claimed.    While the *Commission* included the reproduction cost of all paving in arriving at the stated present value of the plant, it does not follow that they ac-

tually included it in making their final award of the just value of the plant as an entirety. That they did not is probable from the fact that they do not include the sum of $54,000 in the table of reproduction cost set out in their opinion and from the fact that they say "paving is of relatively little importance in this case." An amount of $54,000 in a total valuation of $525,000 would not be relatively unimportant, while an amount of $1,267 would be so. But there is other language in the opinion of the *Commission* that renders it doubtful whether or not the item of $54,000 was omitted in arriving at the final award. In the concluding part thereof they say:

"The cost of reproduction of the physical property, excluding materials and supplies and nonoperating property, but including all paving now over mains, is $569,510, the corresponding present value $510,953. Bearing these facts in mind, as well as the present condition of the plant, the needed changes, its capitalized value on an unduly low depreciation rate, and also certain important features of the original franchise under which the company existed for most of its life, it is the judgment of the *Commission* that $525,000 represents fair compensation to the owners of the company for the property used and useful for the convenience of the public, regarding that property as an entity."

One thing is evident. The *Commission* either allowed $54,000 for reproduction cost of paving not disturbed and about $14,000 for going value in their final award, or else they disregarded the item of $54,000 and allowed about $68,000 for going value.

A consideration of reproduction cost is profitable and proper only in so far as it will aid in determining the ultimate fact to be ascertained by the *Commission,* namely, the just present value of the utility as an entity. If it is apparent that an evidentiary fact will not so aid the *Commission* or that it will lead to erroneous results, such evidentiary fact should be disregarded. Cost does not always equal value.

Neither does cost less depreciation always equal value.    Generally cost less depreciation will fairly represent value.    For that reason it is an important element in determining value. The reproduction cost is also important.    But there may be elements that enter into both cost and reproduction cost that do not enhance value.    The increased cost in a given case of producing a particular result may not add to the market value of such result.    While it might cost $54,000 more to replace pipes under paved streets than under unpaved streets, pipes under paved streets would not be worth more for waterworks purposes than pipes under unpaved streets.    It is doubtful if they would be worth as much owing to the lessened cost of making repairs on pipes laid in unpaved streets. The increased amount of business, if any, resulting from paved streets would manifest itself in the earnings of the company and would be properly considered in that item.    It should not be twice considered.

In rate-making cases reproduction cost of laying pipes under pavement has been disregarded.    *People ex rel. Kings Co. L. Co. v. Willcox,* 210 N. Y. 479, 104 N. E. 911; *Cedar Rapids G. L. Co. v. Cedar Rapids,* 144 Iowa, 426, 120 N. W. 966, affirmed in 223 U. S. 655, 32 Sup. Ct. 389; *Des Moines Gas Co. v. Des Moines,* 199 Fed. 204.    The present reasonable value of the utility determines rate as well as price. In both the original investment is a valuable aid in determining the present value of the property, but it is not controlling. .It is only one of several items to be considered in arriving at present value, whether for purchase or rate-making purposes. If the original investment was extravagant or if parts of the physical property have become obsolete, the public should not be required to pay on original cost either by way of rate or purchase.    On the other hand, if the original investment was prudent and values have enhanced the utility should reap the benefit thereof both in rate and selling price.

An elimination of the item $54,000 results, as before

stated, in an allowance of about $68,000 for going value.
Under the evidence such sum is reasonably adequate.   If the
*Commission* erred in allowing only $14,000 for going value,
such error was cured by its allowance of $54,000 for repro-
duction cost of paving not disturbed.   If it did not allow the
$54,000 item, then it allowed $68,000 for going value.   In
either case the plaintiff was not prejudiced.

Some argument is made that the other items of physical
property were unduly depreciated by the *Commission,* but we
cannot say that the circuit court erred in affirming the find-
ings made by it as to them.   While it appears that the net
earnings of the plaintiff are about $40,000 per year, it also
appears that it would require upwards of $100,000 to put the
plant in good condition.   Earnings, if derived from a rea-
sonable rate, are important factors in determining value.
But like all other factors they are not in themselves conclu-
sive.   Upon the whole evidence we discover no valid ground
for disturbing the valuation fixed by the *Commission* upon the
property of the plaintiff as an entity and approved by the trial
court.

It is urged that the trial court did not pass upon the ques-
tion of value as an original question of fact, but merely held
that the *Commission* had committed no error in its proceed-
ings and so affirmed the award.   In this counsel is mistaken.
The first finding of the court recites that the *Commission*
fixed $525,000 as the compensation to be paid the plaintiff
for its waterworks system.   The second finding is "that the
compensation so fixed by the *Commission* is lawful."   This
finding is short, but it answers the legal call.   In finding
that the compensation fixed by the *Commission* was lawful
the court found that it was just and adequate, else it could
not be lawful.

The statute, sec. 1797m—84, however, does more than
merely throw the burden of proof upon the plaintiff.   Upon
appeal from an order of the *Commission* the burden rests

upon him to establish "to the full satisfaction of the court" that the compensation fixed is unlawful. If he cannot so satisfy the court the compensation fixed by the *Commission* stands. Essentially the same provisions are contained in sec. 1797m—70. These statutory provisions require something more than a mere preponderance of the evidence to overthrow the findings of the *Commission*. The evidence of error must be "clear and satisfactory" or error must be established "to the full satisfaction of the court," in order to warrant it in declaring the findings unlawful. The statutory words used are so simple and expressive that attempted explanation thereof would serve only to confuse.

From the statement of facts it will be seen that bonds secured by a trust deed upon the property of the plaintiff were, at the time compensation was fixed, outstanding to the amount of $424,000. It is claimed that proper service upon the bondholders was not had and hence the *Commission* and the court had no jurisdiction of them. We shall not inquire into or determine whether or not the bondholders were properly served by the statutory publication, since they are not necessary parties to this proceeding. It appears that the plaintiff has the right to call in the bonds at any time by paying a premium of seven and one-half per cent. It further appears that the compensation fixed by the *Commission* is more than sufficient to pay the full amount of the bonds including the premium, and that the *Commission* required plaintiff to call in and cancel the bonds and turn over the utility free from all liens. This the plaintiff has a right to do and this the *Commission* can require to be done, and if this is done no right of any bondholder is in any way adversely affected. Each bondholder agreed that plaintiff might declare the bonds due at any time and have them canceled upon paying their face and premium. Since the order of the *Commission* operates only upon plaintiff and requires it to do no more than it has a perfect contract right with its bondholders to do, they are in no

wise concerned in the proceeding. Their rights are fully protected by the order made, and no rights of plaintiff are invaded by it.

The statute does not contemplate that a mere equity of redemption shall be valued by the *Commission* and purchased by the city. It is the property of the utility that is bought. *Green Bay & M. C. Co. v. Kaukauna G., E. L. & P. Co.* 157 Wis. 412, 147 N. W. 701. And where the compensation awarded is sufficient to pay up all existing liens and they are ripe for payment, they must be paid by the utility and the property turned over to the city freed from any and all outstanding claims.

What has already been said disposes of the claim that the *Commission* should have provided that plaintiff receive its money without calling in its bonds. When it accepted an indeterminate permit it agreed to sell to the city at any time the latter might elect, and it must then have contemplated that if the city did so elect before the bonds matured it would have to call them in. The city is under no duty to assume plaintiff's contract obligations. *Green Bay & M. C. Co. v. Kaukauna G., E. L. & P. Co., supra.* It is bound to pay only the just value of the utility. The fact that plaintiff has entered into a contract whereby it will cost it something to deliver the utility to the city cannot affect the reasonable value of the utility. The city is not concerned with the terms of settlement between the utility and its creditors so long as it receives the property free from liens. To require the city to pay the premium would be to require it to pay the bonus plaintiff agreed to pay for the use of money. Municipalities have nothing to do with past obligations incurred by the utility except in so far as they may be a lien upon the property bought. If they are, the utility must satisfy them out of the purchase price if that is sufficient to do so. That is all the *Commission* required in this case.

The city levied the sum of $8,481.25 taxes on plaintiff's

property for the year 1913 on a valuation of $500,000.    On
October 4, 1914, by stipulation between the parties, it took
possession of the plant as of October 1, 1913.    It is claimed
the city should pay the taxes for the year 1913.    Except as
provided in sec. 1040, Stats. 1913, all personal property shall
be assessed as of the first day of May in each year.    Sec.
1033, Stats. 1913.    This property does not fall under the
exception.    By sec. 51.43 (p. 845) Stats. 1913, it is deemed
personal property for the purpose of taxation.    Sub. 8, sec.
1040, provides that no change in location or sale of any per-
sonal property after the first day of May in any year shall
affect the assessment in such year.    The tax was a debt of
the plaintiff incurred before the award was made, and the
*Commission* properly held it was payable by plaintiff.    *Green
Bay & M. C. Co. v. Kaukauna G., E. L. & P. Co.* 157 Wis.
412, 147 N. W. 701; *Allen v. Greenwood,* 147 Wis. 626, 133
N. W. 1094; *Bogue v. Laughlin,* 149 Wis. 271, 136 N. W.
606.    The statutory provision requiring a tax on personal
property to be paid by one who owns it May 1st, though a
sale is made thereafter, works no inequity.    Up to the time
of sale he has the property—after that the purchase price,
presumably equal to the value of the property.

The last claim made is that the order of the *Commission* is
unreasonable because it did not require the city to pay or pro-
vide the means of payment before it took possession of the
plant.    This objection, under the facts shown, has now no
merit.    It appears that on March 27, 1914, and within the
six months fixed by the *Commission* the city duly tendered
plaintiff the sum of $552,926.18, being the amount of the
award of $525,000 and $11,821.53 agreed upon for additions
and supplies, with interest on both sums from October 1,
1913, at six per cent.    It also appears that such tender has
at all times since been kept good.    As pointed out in *Janes
v. Racine,* 155 Wis. 1, 143 N. W. 707, the provision of sec. 3,
art. XI, Const., that a city acquiring a public utility shall

provide for the collection of a direct annual tax to pay therefor, is for the protection of the utility. When it appears, as it now does, that the city has the money on hand and has made lawful tender thereof to the utility, a noncompliance with the provision becomes a harmless error.

*By the Court.*—Judgment affirmed.