[S. F. No. 7451. In Bank.—January 17, 1916.]

## MARIN WATER AND POWER COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

PUBLIC UTILITIES—POWER OF RAILROAD COMMISSION TO FIX VALUE IN EMINENT DOMAIN.—Section 23a of article XII of the constitution, adopted as an amendment on November 3, 1914, removes all doubt of the present validity of the act of 1913 (Stats. 1913, p. 684), amending section 47 of the Public Utilities Act, which empowered the railroad commission to fix the just compensation to be paid for the property of a public utility sought to be acquired by such public corporations in condemnation proceedings.

ID.—PROCEEDING COMMENCED PRIOR TO VALIDATING CONSTITUTIONAL AMENDMENT—WAIVER OF OBJECTION—CERTIORARI BEFORE SUPREME

COURT.—Where the proceeding by a municipal water district before the railroad commission, asking the commission to fix the compensation to be paid for the property of a public service water company, was commenced and substantially all the evidence was taken therein before the constitution had confirmed said amendment to section 47 of the Public Utilities Act, but the matter was submitted to the commission and the decision was made thereon after said confirmation, the public utility, in an application before the supreme court to review the decision of the commission, may waive all objections based on the ground that the proceeding before the commission was begun and evidence taken therein before the commission was authorized to act in such matters, if such objection would otherwise lie.

ID.—JUDICIAL POWER OF RAILROAD COMMISSION.—The railroad commission exercises judicial power in making its determination as to the compensation to be paid for the property of the public utility in an action in eminent domain to be subsequently brought by the public corporation for the condemnation of such property for its use, as provided in section 47 of the Public Utilities Act, as so amended.

ID.—JURISDICTION OF SUPREME COURT ON CERTIORARI.—The functions of the commission being judicial, the supreme court would have had jurisdiction in *certiorari*, under article VI, section 4, of the constitution, and section 1068 of the Code of Civil Procedure, to review its final decision in the proceedings, without the express grant of such jurisdiction in the act itself. The jurisdiction so derived could extend only to the inquiry whether the commission had exceeded its authority.

ID.—FINDINGS OF COMMISSION ON QUESTIONS OF FACT—QUESTION OF LAW GOING TO JURISDICTION.—Notwithstanding the provision of the Public Utilities Act excluding from review questions of fact determined by the commission, the law is that when a finding or conclusion of fact by the commission is based on uncontradicted evidence, its accuracy usually becomes a mere question of law, and the question may be reviewed if it goes to the jurisdiction.

ID.—HEARING TO DETERMINE COMPENSATION—COMMISSION MAY CALL WITNESS.—On the hearing to determine such compensation, the commission has the discretionary power to call and examine a witness on the subject of the values of the several properties, notwithstanding he was not proposed by either of the parties.

ID.—COMPETENCY OF WITNESS ON QUESTION OF VALUE.—A witness is competent to testify to the values of such property, where it appears that for the purpose of forming an opinion as to its value, he had viewed and examined all the property with care and had made exhaustive inquiries regarding the previous sales of property of similar character in the vicinity and of the different uses to which the properties in question were adapted.

ID.—DETERMINATION OF VALUE—LAND AS SOURCE OF SURFACE WATER SUPPLY.—The faculty which land possesses as a source of surface

water supply for the reservoir of a water company owning the same is a property right of the owner, and must be considered by the commission as an element in determining the value of the land. If such element is considered by the commission in its determination of the value of the land, the refusal to give it a separate value would not deprive the commission of jurisdiction or make its award invalid.

Id.—Future Possibilities of Land—Allowance of Present Value of Potentiality.—The value of future possibilities of advantage that might accrue to the land by means of additional dams is included in an allowance made by the commission of a value for the potential storage of storm water on the land by giving it a present additional value because of that fact.

Id.—Consideration of Evidence of Value—Witness not Called by Parties.—The commission, in determining the value of the property in controversy, was not limited to a consideration of the evidence of the witnesses offered by the parties to the proceeding, and could consider other evidence properly produced at the hearing, including the testimony of a witness called by the commission itself.

Id.—Separate Findings as to Value of Each Parcel of Property.— The failure of the commission to make a separate finding as to the value of each separate parcel of the property of the public utility in question did not cause a loss of jurisdiction or make the proceeding for the valuation of the property void.

Id.—Court of Limited Jurisdiction—Presumptions as to Jurisdiction.—When once a court of limited jurisdiction has acquired jurisdiction of the parties and of the subject matter, the same presumptions, as to subsequent proceedings, apply as with respect to courts of general jurisdiction, and subsequent irregularities do not make its judgments void.

APPLICATION for a Writ of Certiorari to review a decision of the Railroad Commission of the State of California.

The facts are stated in the opinion of the court.

Lilienthal, McKinstry & Raymond, for Petitioner.

Douglas Brookman, and Max Thelen, for Respondent.

Curtis H. Lindley, and George H. Harlan, for Marin Municipal Water District.

SHAW, J.—This is a proceeding in *certiorari* or review, instituted under the provisions of section 47 of the Public

Utilities Act as amended in 1913 (Stats. 1913, p. 684), and of section 67 of said act.

Section 47 originally gave the railroad commission power to ascertain the value of the property of public utilities and to make revaluations thereof from time to time, but for purposes of regulation only.   The amendment of 1913 empowers the commission, on petition of any county, municipal corporation, or municipal water district which intends to acquire, under eminent domain proceedings, or otherwise, the property of any existing public utility, or any part or portion thereof, to fix and determine the just compensation to be paid for such property in such condemnation proceedings.   The commission is also empowered to fix and determine such value upon the filing of a petition stating that such county, municipal corporation, or district intends to submit to the voters thereof a proposition to acquire the property of any existing public utility or any part thereof.

On May 20, 1914, the Marin Municipal Water District, a public corporation created under the act of May 1, 1911, and the amendment of December 24, 1911 (Stats. 1911, p. 1290; Spec. Sess. 1911, p. 92), filed with the commission a petition under the provisions of section 47, asking the commission to fix and determine the compensation to be paid by said district for all the lands, property, and rights of the petitioner, Marin Water and Power Company, connected with its business of selling water for domestic and other uses in Marin County.   Such proceedings were had thereon that the commission heard the evidence of the respective parties and made a final determination as to the value of the property in question, which decision became final on May 10, 1915.   This proceeding was begun within the time allowed by the Public Utilities Act for the review of said decision.

At the time of the enactment of the amendment of section 47, aforesaid, and at the time of the filing of the petition to the railroad commission and the hearing of the evidence thereon, the constitution, by section 23, article XII, provided that: "The railroad commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the state of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the legis-

lature, and the right of the legislature to confer powers upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this constitution.'' Section 22 of the article also provided that the authority of the legislature to give the commission powers of the same kind, or different from those conferred upon it therein, ''is expressly declared to be plenary and unlimited by any provision of this constitution.'' Section 14 of article I provides that when private property is taken for public use, the compensation to the owner shall be fixed by a jury, unless a jury is waived. So far as private property belonging to public utilities is concerned, this statute purports to abrogate the guaranty of section 14. The proposition that the above clauses of sections 22 and 23 were intended to authorize the legislature, by the simple device of giving additional powers to the railroad commission, to nullify all the other constitutional guaranties for the protection of persons and property, is certainly startling. It may well be doubted if the people understood that they were thus investing the legislature with all the powers of state. If this proposition arose, the question whether the rule of *ejusdem generis* would require a different construction would be presented. But after the enactment of said amendment to section 47, the constitution itself was amended by the adoption, on November 3, 1914, of section 23a of article XII, declaring that the railroad commission should have such power to fix the just compensation to be paid for the property of any public utility, when it is sought to be acquired by any of the public corporations above named, as the legislature should confer upon it, that ''the right of the legislature to confer such powers upon the railroad commission is hereby declared to be plenary and to be unlimited by any provision of this constitution,'' and that ''all acts of the legislature heretofore adopted, which are in accordance herewith, are hereby confirmed and declared valid.'' This, of course, removes all doubt of the present validity of the said amendment of section 47. The proceedings here under review were begun, it must be noted, and substantially all the evidence was taken therein, before the constitution had confirmed said amendment to section 47. But the matter was submitted to the commission and the decision was made thereon after said confirmation. In this condition of

the case the petitioner now expressly waives any objection
that might be urged because of the enactment of said amend-
ment of section 47 before the amendment of the constitu-
tion.   This, of course, includes all objections on the ground
that the proceeding was begun and the evidence taken there-
in before the commission was authorized to act in such mat-
ters, if such objection would otherwise lie.   We have no
doubt that the petitioner may effectually waive a matter of
that character.   As this would make the adjudication of the
commission valid, so far as such objections are concerned, it
is unnecessary for us here to express any opinion as to the
soundness of the objections, or as to the effect, in this par-
ticular, of the several amendments to the constitution above
mentioned.   We proceed, therefore, to consider the case upon
the theory that the commission, from the beginning, had
lawful authority to entertain the proceeding.

Section 47 of the Public Utilities Act, as amended, after
giving to the railroad commission power to "fix and deter-
mine the just compensation that should be paid to the owner"
of the public utility property, the procedure to be as pro-
vided in section 70 of the act, also provides that if the owner
whose property is thus sought does not, within twenty days
after the commission has certified its findings as to such
compensation, file with the commission an agreement to
accept for the property the amount so fixed, the public cor-
poration at whose instance such compensation was fixed,
must, within sixty days after the filing of such findings,
commence a proceeding in eminent domain for the condemna-
tion of such property for its use.   Similar provisions are
made for the case where the public corporation in its petition
states its intention to submit such proposition to the voters.
It further provides that the compensation so fixed by the
commission shall be conclusive as to the amount to be allowed
for the property in the proceeding in eminent domain begun
pursuant thereto, leaving the court therein to decide only the
remaining material issues.

The first proposition to which the petitioner here directs
our attention is that, in making this determination as to com-
pensation, the commission exercises judicial power.   To this,
counsel for the other parties and for the commission make
no answer.   They apparently concede it.   We have no doubt
that this is correct.   The judicial function is to "declare the

law and define the rights of the parties under it." (*Frasher* v. *Rader*, 124 Cal. 133, [56 Pac. 797].) To determine "what shall be adjudged or decreed between the parties, and with whom is the right of the case, is judicial action." (*Rhode Island* v. *Massachusetts*, 37 U. S. (12 Pet.) 718, [9 L. Ed. 1233].) "A determination of the rights of an individual under the existing laws" is an exercise of judicial power. (*Quinchard* v. *Board of Trustees*, 113 Cal. 669, [45 Pac. 856].) An essential element of judicial power, distinguishing it from legislative power, is that it requires "the ascertainment of existing rights." (*People* v. *Board of Supervisors*, 122 Cal. 421, 424, [55 Pac. 131].) "It is not to be disputed that, as a general proposition, the judicial function is the determination of controversies between parties." (*Title etc. Co.* v. *Kerrigan*, 150 Cal. 319, [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356]; see, also, *Robinson* v. *Kerrigan*, 151 Cal. 47, [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129]; *Sinking Fund Cases*, 99 U. S. 761, [25 L. Ed. 504]; 23 Cyc. 1620.) "A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." (*Prentis* v. *Atlantic etc. Co.*, 211 U. S. 226, [53 L. Ed. 150, 29 Sup. Ct. Rep. 67].) "The legislature may determine what private property is needed for public purposes—that is a question of a political and legislative character, but when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public taking the property, through Congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry." (*Monongahela Nav. Co.* v. *United States*, 148 U. S. 312, 327, [37 L. Ed. 463, 13 Sup. Ct. Rep. 622].) In the present case a controversy exists between the public corporation desiring the property and the private owners thereof conducting the public utility, concerning the compensation to be paid to such owners for the property when it is taken by the public corporation. The initiation of the proceeding before the commission necessarily raises that controversy, if it did not exist before, and presents it for decision. Its determination establishes the right and obligation

of the parties, respectively, in the expected action in eminent domain, the right of the owners to receive and the obligation of the public corporation to pay the sum fixed as compensation for the property if it is taken. It comprises an essential part of the action; it conclusively determines one of the facts to be determined therein for the purposes of that action. It is, to that extent, as much an exercise of judicial power, as above defined, as is the judgment of the court in the action to condemn the property.

The functions of the commission being judicial, the supreme court would have had jurisdiction in *certiorari* to review its final decision in the proceedings, without the express grant of such jurisdiction in the act itself. (Const., art. VI, sec. 4; Code Civ. Proc., sec. 1068.) The jurisdiction derived from the constitution and from the Code of Civil Procedure, under the well-established rules, could extend only to the inquiry whether the commission had exceeded its authority. Section 47, however, refers to section 67 of the Public Utilities Act.

Section 67 provides that the review thereby authorized shall not extend further than to determine whether the commission "has regularly pursued its authority," but adds that the review may include the question whether the decision of the commission "violates any right of the petitioner under the constitutions" of California and the United States, respectively. In view of our conclusions on the merits presently to be considered, we find it unnecessary to determine or discuss the question whether this additional clause enlarges our powers in *certiorari*, upon which the court has hitherto been equally divided. (See *Pacific T. & T. Co.* v. *Eshleman*, 166 Cal. 651, 692, [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]), for the opposing views on this point.) There is also a provision excluding questions of fact from review. Notwithstanding this, however, the law remains that when a finding or conclusion of fact is based on uncontradicted evidence, its accuracy usually becomes a mere question of law, and in that event the question may be reviewed if it goes to the jurisdiction. With this preliminary statement we proceed to consider the objections to the proceedings.

At the hearing objection was made to the action of the commission in calling W. N. Wells to testify as a witness on the

subject of the values of the several properties. He was sworn and testified at the instance and request of the commission and against the will of the Marin Water and Power Company. It is now conceded that judicial tribunals have power to call and examine witnesses in furtherance of justice and against the will of either party. No authorities are cited in the briefs, but we find that the following sanction the practice: 1 Roscoe on Criminal Evidence, 139, 8th ed., 210; *Selph* v. *State,* 22 Fla. 543; *Clark* v. *Commonwealth,* 90 Va. 368, [18 S. E. 440]; *Hill* v. *Commonwealth,* 88 Va. 639, [29 Am. St. Rep. 744, 14 S. E. 330]; *O'Connor* v. *National Ice Co.,* 4 N. Y. Supp. 537; *Hurd* v. *Hill,* 26 Ill. 497. From these it is clear that the calling of Wells and his examination as a witness was within the discretion of the commission.

It is also contended that Wells was an incompetent witness on the subject, and, hence, that the commission went beyond its powers in considering his testimony. We think he was shown to be competent. He was regularly examined and cross-examined at great length as to his knowledge of the subject. His testimony showed that for the purpose of forming an opinion as to its value he had viewed and examined all the property with care, and had made exhaustive inquiries regarding the previous sales of property of similar character in the vicinity and of the different uses to which the properties in question were adapted. He appears to have followed substantially the same course in arriving at his opinions that was adopted for that purpose by the expert value witnesses called by the petitioner. (See *Spring Valley Waterworks* v. *Drinkhouse,* 92 Cal. 535, [28 Pac. 681]; *Vallejo etc. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 574, [147 Pac. 252].) In our opinion the commission did not exceed its authority in considering the testimony of such a witness together with the other evidence produced before it bearing on the question of use and value. In view of these conclusions, we find it unnecessary to consider how far the commission is bound by the rules of evidence and procedure in courts of law. It did not, in these particulars, transgress those rules.

The principal objection to the testimony of Wells relates to his method of valuing the lands belonging to the petitioner from which water could be obtained. These lands are

mountainous and so situated that the annual rainfall thereon may be conveniently collected, stored on the land and thence distributed and sold to consumers. There was evidence tending to show the average annual rainfall upon these lands, the quantity thereof that could be annually collected and stored, and the selling price paid by the consumers. Wells did not give this advantage of water storage a separate value, but merely added it to the land value and reported it all as one item. The commission appears to have believed that separate values could not be given to the land and water respectively, basing its opinion upon the proposition that water which falls upon the ground as rain and runs off into the reservoir as surface water does not constitute a legal water right. We think this is no reason for saying that the two elements of value could not be separately estimated, or that there is any distinction in this respect between the added value to the land by reason of the water privilege from this cause and the added value which land may have by reason of a riparian right or a right appurtenant in a stream. Whether it is properly a water right or not is immaterial. The fact that water can annually be obtained therefrom for sale is the material element for consideration. Both the commission and the witness, however, did consider this element and gave the land additional value on that account. There can be no doubt that this element of the value of land is as much the property of the land owner as any other element which gives it value. So far as the commission appears to have held that it was not a property right, it was in error, but inasmuch as it did give the additional value to the land, it is immaterial whether the commission, in allowing this element of value, styled it a technical water right, or a mere advantage of water storage giving additional value to the land. The refusal to give it a separate value would not deprive the commission of jurisdiction or make its award invalid.

The company claims that by means of additional dams the amount of water stored on its land annually could be greatly increased; that these possibilities of future advantage largely increased the value of the property, and that the commission did not allow anything therefor. We do not think this claim is sustained by the record. The commission refused to make a separate statement of the value

of these future possibilities, but it appears that it did allow a value for the potential storage of storm water on the land by giving it a present additional value because of that fact. Although the expert witnesses for the petitioner adopted a different method, they practically arrived at the same result. They estimated the run-off and storage and probable expense of storage, distribution, and sale, the probable selling price, capitalized the net profit, and added the present value of the result to the value of the land as estimated apart from its value for water. While the values were larger than those given by the commission, the principle is the same in either case if the valuation is honestly made.

It appears from the record that the witnesses for the municipal water district fixed certain values for the property in controversy, that the witnesses for the power company also fixed certain somewhat different values therefor; and that the value as fixed by the commission falls below that fixed by the witnesses on either side, and corresponds more nearly to the values fixed by the witness Wells. This, they say, is a decision outside of the issues, upon evidence which neither party offered, and is upon a controversy which neither party submitted to the commission for its consideration. We do not so understand the law. Wells testified in the presence of the parties and was duly examined and cross-examined by them. As heretofore stated, this constituted legal evidence upon the issue as to the value of the property in controversy. The commission was not bound to limit itself to the testimony of the witnesses offered by the respective parties, but had the power to take the other evidence produced at the hearing. We need not inquire concerning the additional point that the commission claimed that, under section 70 aforesaid, it was ''empowered to resort to any other source of information available,'' including evidence not introduced at the hearing. Some remarks in its opinion indicate that the commission may believe that it has that power. But it did not exercise it in this proceeding. It considered only the evidence actually produced.

It is not to be supposed, from what has been said, that the objections we have considered would, if well taken, operate to avoid the award of compensation. It may be that they are matters not going to the jurisdiction, and hence not reviewable in *certiorari*. We have preferred to consider them

on their merits. As we find them not well taken, the question whether or not they would invalidate the proceeding becomes immaterial.

Further objection is made on the ground that the commission did not find separately the value of each separate parcel of the property of the water company. Section 47 requires the commission to "proceed to fix and determine the just compensation . . . in the manner and in accordance with the provisions of section 70." Section 70 provides that it "shall make and file its findings of fact in writing upon all matters concerning which evidence shall have been introduced before it which in its judgment have any bearing on the value of the property." Evidence was given showing separately the value of the respective parcels. Section 47 also provides that after the filing of the petition and before payment of the compensation fixed, the commission may be required to find the amount of an alleged intervening unreasonable depreciation in value, to be deducted from the compensation allowed. Also, that it may be called on to fix the amount the owner may have had to expend to preserve the property after the final judgment of condemnation and before payment, to the end that the owner may be reimbursed such amount. In fixing these amounts it might be found convenient to have the parcels separately valued. But, however this may be, we do not think the failure to make such detailed findings causes a loss of jurisdiction or makes the proceeding void. It is admitted that the commission acquired full jurisdiction. When once it is made to appear that a court of limited jurisdiction has acquired jurisdiction of the parties and of the subject matter, the same presumptions, as to subsequent proceedings, apply as with respect to courts of general jurisdiction, and subsequent irregularities do not make its judgments void. (Van Fleet on Collateral Attack, sec. 806; *Long* v. *Burnett,* 13 Iowa, 28, [81 Am. Dec. 420].) In such a case "jurisdiction cannot be lost by the erroneous exercise of the power conferred." (Brown on Jur., sec. 25.) Section 70 leaves it to the discretion of the commission to determine whether or not it will make detailed findings. It is not declared to be mandatory. At most the making of a general finding is but an irregularity. If the parties have any remedy when injured by such failure, it is by *mandamus,* not *certiorari.* It does not go to the jurisdiction.

If the undisputed evidence had shown that the property had a special additional value, as, for example, that by reason of the situation and topography of a parcel of the land a quantity of water could be annually caught, stored thereon, and sold at a profit, and that the commission had refused to allow such value, as a part of the compensation fixed, it may be conceded that this would have been a deprivation of property without due process of law, a disregard of the petitioner's right to just compensation, and, therefore, a violation of both the federal and state constitutions. (*Appleby* v. *Buffalo,* 221 U. S. 524, [55 L. Ed. 838, 31 Sup. Ct. Rep. 699]; *Chicago etc. Co.* v. *Chicago,* 166 U. S. 226, [41 L. Ed. 979, 17 Sup. Ct. Rep. 581]; *Davidson* v. *New Orleans,* 96 U. S. 102, [24 L. Ed. 616]; *Backus* v. *Fort St. etc. Co.,* 169 U. S. 557, [42 L. Ed. 853, 18 Sup. Ct. Rep. 445]; *McGovern* v. *New York,* 229 U. S. 363, [46 L. R. A. (N. S.) 391, 57 L. Ed. 1228, 33 Sup. Ct. Rep. 876].) We do not find that the commission did thus refuse to allow an undisputed value, and, therefore, the argument founded on the above stated proposition must fall.

With respect to the contention that the commission did not allow the value of the water in storage at the time of the award, it is sufficient to say that our attention has not been directed to any evidence of such value, nor of the quantity in storage. It is difficult to see how it could be valued, under the circumstances. It was the store for daily use and the quantity would change from day to day. The time when the water district would take possession of the plant could not be foretold. It seems difficult to fix such compensation except by finding the value per gallon and directing a measurement at the time of the transfer of possession. But this question is not now before us, and we express no opinion regarding it.

The proceedings and determination of the railroad commission are affirmed.

Sloss, J., Henshaw, J., Melvin, J., and Lawlor, J., concurred.

The chief justice took no part in the consideration of this cause, and does not participate in the decision.

Rehearing denied.