·LAKE SUPERIOR DISTRICT POWER COMPANY, Appellant, vs. PUBLIC SERVICE COMMISSION and another, Respondents.

*January 17—February 15, 1944.*

For the appellant there was a brief by *Sanborn, Blake & Aberg* and *Glen H. Bell,* all of Madison, and oral argument by *Mr. Bell.*

For the respondent Public Service Commission there was a brief by the *Attorney General* and *H. T. Ferguson,* assistant attorney general, and oral argument by *Mr. Ferguson.*

For the respondent city of Medford there was a brief by *Roberts, Roe & Boardman* of Madison, and oral argument by *Glenn D. Roberts.*

FAIRCHILD, J. The appellant operated its utility in the city of Medford under an indeterminate franchise. The effect of the acceptance of the indeterminate franchise has been considered in the cases of *Connell v. Kaukauna,* 164 Wis. 471, 159 N. W. 927, 160 N. W. 1035, and *Wisconsin P. & L. Co. v. Public Service Comm.* 219 Wis. 104, 261 N. W. 711, 262 N. W. 257, among others, and the development of the law that has resulted from legislation and court interpretation is that the legislature has granted the municipality the right to acquire such property and provided a procedure under which the determination of "just compensation" for the taking of utility property by eminent domain may take place. The appellant cannot complain if the compensation is just and founded on competent testimony before the commission when acting upon the evidence even though the witnesses gave their testimony before an examiner. As a general rule in acquisition proceedings a valid result is reached when the Public Service Commission acting in accordance with the requirements of the statutes has on substantial evidence come to a conclusion as to the value of the property of the utility sought to be acquired by the municipality.

The appellant feels aggrieved because the commission or a majority of its members did not conduct the hearings and listen to the testimony as given instead of having an examiner act for it. But the commission did come to its decision upon an examination of the written record of the proceedings. The law in chs. 196 and 197, Stats., provides that the commission may conduct any number of investigations contemporaneously and sec. 196.24 (3), Stats., expressly provides that this may be done "through different agents, and may delegate to any agent the taking of testimony bearing upon any investigation or hearing. The decision of the commission shall be based upon its examination of all testimony and records."

The contention by the appellant that ch. 196, Stats., has no application to acquisition proceedings loses all force when the

history of the enactment of that chapter and ch. 197, Stats., is noticed. Both chapters were part of the original Public Utility Act. (Ch. 499, Laws of 1907.) The subsequent separation of the sections of the original act did not repeal any portion of the act. Sec. 196.24, Stats., reads today as it did before the separation. And no doubt exists that this section applies to hearings in municipal acquisition proceedings. In the original chapter the provision in that section (sec. 196.24 (3), Stats.) was general and was to apply to all hearings. As suggested by the attorney general, neither ch. 499, Laws of 1907, nor any provision of ch. 197, Stats., created by the division of the chapter makes any specific provision for the procedure to be followed by the commission in its conduct of proceedings for the municipal acquisition of utility property except the provision that a public hearing shall be held upon the matter of the just compensation and terms and conditions for the taking of the property, and a further provision as to the notice of such hearing that is required to be given. Sec. 197.05 (1), Stats.

In *Superior W., L. & P. Co. v. Public Service Comm.* 232 Wis. 616, 288 N. W. 243, on which the appellant relies, the provision of ch. 196, Stats., which was sought to be applied to proceedings under ch. 197, Stats., was one which had been added by sec. 2, ch. 183, Laws of 1931, and was not a part of the original act. The court there points to the legislative history of these two chapters and the decision cannot be interpreted as holding that in all cases, ch. 196, Stats., has no application to ch. 197, Stats. This practice of hearing testimony by an examiner is a well-settled method of procedure and has facilitated the functioning of the commission. A requirement of hearings conducted by the commission in person would add immensely to the duty of the commission and in a considerable degree counteract the result sought to be accomplished by that legislation. It is the declared public policy of the state and a party's rights are not jeopardized by such

a procedure. Should reason or practice to warrant condemnation of it arise, the legislature is the body to be appealed to.

Appellant contends further that the commission acting in a judicial capacity as a trier of fact should not be allowed to produce its own witnesses because of the danger of losing its character as a judicial body. We recognize that close association in a common effort may lead a trier of facts to place confidence in an associate, but it does not necessarily follow that partiality will result. Here the witnesses were subjected to cross-examination by the counsel of the appellant and to that extent occupied no more favorable position than did the expert witnesses of either the city or the company. And it is probable that the commission's expert testimony was as impartial as the testimony of the experts produced by the interested parties. Fault may be found with the practice of calling for expert opinions by each adversary in a judicial proceeding and leaving the court or jury to choose between the contradictory testimony possibly affected by the desire to place the interest of the respective party in the most favorable light. Whatever method is used there will be room for criticism. A hearing may be judicial when in the full sense of the word the evidence acted upon is adequately disclosed. It was no doubt contemplated by the legislature in placing the appraisal of a utility, a highly technical problem, in the hands of the commission, that without compromise of the requirements inherent in a fair hearing "on the footing of convenience or expediency or because of a natural desire to be rid of harassing delay" some difficulties might thus be eliminated in matters where a municipality is acquiring property of a public utility without jeopardizing the rights of the public or of a private owner. Sec. 196.855, Stats., reads:

"Expenses incurred by the commission in making any appraisal or investigation of public utility property under the provisions of chapter 197 shall be charged directly to the municipality making the application. . . ."

There is every indication that the legislature intended such investigations to be made, and it would appear that the best use that could be made of such investigations would be introduction as evidence before the examiner so that the testimony can be subjected to investigation and the witnesses examined by counsel of both parties. See *Ohio Bell Tel. Co. v. Comm.* 301 U. S. 292, 57 Sup. Ct. 724, 81 L. Ed. 1093, and *Marin Water & Power Co. v. Railroad Comm.* 171 Cal. 706, 154 Pac. 864.

The remaining question relates to the sufficiency of the sum of $131,600 determined upon by the commission as just compensation. In *Oshkosh W. W. Co. v. Railroad Comm.* 161 Wis. 122, 127, 152 N. W. 859, this court in referring to the valuation of the utility said: "In the last analysis it is the exercise of a sound and competent business judgment upon many elements of uncertain and debatable value considered as a business entity. Hence grave errors in arriving at and seriously affecting the final result must be shown before a valuation of the commission can be set aside." We are to determine whether substantial evidence existed upon which the judgment of the commission was based. The commission had before it the reports of the engineers of the company, the city, and the commission's staff. It is unnecessary to state at length the qualifications of these appraisers. They were qualified to testify covering matters upon which they gave testimony, some perhaps better qualified in one phase of the problem than another. The valuations made by these men were arrived at independently. Not until all three had completed their investigations were the results compared. All three determined the reconstruction cost new of the utility, the per cent condition of the plant and the reconstruction cost new minus depreciation. The results of the investigations as to present condition, reconstruction cost new, and reconstruction cost new minus depreciation are as follows:

|  | Company | Staff | City |
|---|---|---|---|
| Reproduction | $191,046 | $173,404 | $166,184 |
| Per cent condition | 77% | 66% | 53% |
| Reproduction minus depreciation | $147,671 | $114,522 | $88,675 |

There is a great variation between the results arrived at by the different engineers. It is admitted that the commission in arriving at the fair valuation placed a great deal of emphasis on the testimony of the commission's staff engineers whose estimates lie in the middle between the extremes of the company's and city's valuation. As this evidence was admissible there is no reason why, if the commission believed this valuation to be near the correct figure, it was not justified in relying on it. Appellant contends that both the engineer for the city, Mr. George Miller, and Mr. Rust for the commission, erred in using the "age and life" method in determining the depreciation of the plant. Average-age tables, it contends, take into consideration future exigencies such as accidents which should not be borne by the seller but are risks to be assumed by the buyer, the city. It contends that the method of determination of depreciation by observation and the exercise of judgment used by the company's engineer, Mr. Learned, is superior. On the other hand, the defendant city contends that the method used by the company's engineer in determining reconstruction cost new was highly speculative, providing for construction of a "de luxe" plant, not actually within the realm of actual practice of the appellant company, and that the determination by the city's expert witness was on the basis of actual performance and construction records of the Lake Superior District Power Company. Certainly the commission gave its considered judgment after the sifting of the testimony. It had ample evidence of a substantial quality before it. No reason for reversing the circuit court's judgment appears.

The appellant contends that the commission failed to consider "going value" of the company in arriving at its valuation. The only witness who attempted to set a definite amount as "going value" was the expert for the company who set the figure at $17,177, representing the cost of establishing the business. Other evidence was presented by the president of the company and by two brokers. The president's testimony tended to show a marked growth of load at Medford and a simultaneous decline in the average cost from June 20, 1931, to June 30, 1941, covering all classes of service. Evidence of losses sustained by the company in sales campaigns from 1931 to 1940 was also produced. The commission, in its decision and findings did not fix upon a separate amount as "going value" but in its opinion it did say: "We have considered all the evidence before us concerning going value and have given such weight to that evidence as it appears to deserve. We have not made any separate determination of the amount that should be allowed for going value in the just compensation herein determined." Going value, even when an appropriate element to be included, need not in all cases be separately stated and appraised as such. Here again, the judgment of reasonable men might differ and the failure to find a definite amount for that element does not indicate that the commission did not make the allowance it says it did. Courts have recognized the difficulty of setting a definite sum as representing "going value." In *Appleton Water Works Co. v. Railroad Comm.* 154 Wis. 121, 145, 142 N. W. 476, the court said: "The commissioners who were placed on the stand were unable themselves to name any definite sum which they were willing to say they considered in their minds as the 'going value,' although both testified in corroboration of the report that 'going value' was considered and allowed for in arriving at the final result." In that case the circuit court had attempted to fix the amount allowed for by the commission as "going value" as the difference between the amounts

determined as reconstruction cost new minus depreciation and other items evaluated by the commission and the final sum arrived at as "just compensation." However, it was necessary to disregard this attempt of the court to name the sum for "going value" since the commission itself had not done so. Various items are no doubt included in the $131,600 named as "just compensation" and in view of the commission's statement in its decision that the "going value" was considered we conclude that in arriving at this final valuation the commission did consider carefully this item and that it is represented in its final determination.

*By the Court.*—Judgment affirmed.